[S. F. No. 12586. In Bank.—April 13, 1928.]

JOHN CUNNING, Respondent, v. COUNTY OF HUM-
BOLDT, Appellant.

John F. Quinn for Appellant.

H. C. Nelson for Respondent.

THE COURT.—This action was instituted to establish as county charges several claims theretofore rejected either in whole or in part, by the board of supervisors of the defendant county. From the judgment entered upon a directed verdict the defendant appeals. The complaint consists of six separate causes of action, each for personal services alleged to have been performed and expenses incurred during the month of July, 1925—either by the plaintiff personally or his assignors—while assisting the district attorney of the defendant county in the detection of crime and the gathering of evidence to be used in the prosecution of criminal cases. Section 4307 of the Political Code has to do with county charges and subdivision 2 thereof, so far as pertinent here, enumerates as such "The traveling and other personal expenses of the district attorney, incurred in criminal cases arising in the county . . . and all other expenses necessarily incurred by him in the detection of crime and prosecution of criminal cases. . . . " The employment of the plaintiff and his assignors by the district attorney during the period designated finds authority in the provisions of this section.

In the absence of fraud the approval of a claim by the local board of supervisors is conclusive upon the county. (*County of Yolo* v. *Joyce*, 156 Cal. 429, 432 [105 Pac. 125].) However, the converse does not necessarily follow and upon

the rejection of a claim by such board the claimant may bring an action at law and establish his claim against the county as fully and effectively as it would have been established by a favorable order of the board in the first instance. (*Thiel Detective Co.* v. *Tuolumne County*, 37 Cal. App. 423, 429 [173 Pac. 1120].) In the instant case, as we have seen, the verdict for plaintiff was rendered in response to a direction of the trial court to that effect. It is settled that in the absence of substantial conflict in the evidence as to the facts determinative of a case, or where such facts are admitted, the trial court may, with propriety, direct a verdict for the party upon whom the burden of proof rests. (*O'Connor* v. *Witherby*, 111 Cal. 523, 528 [44 Pac. 227]; *Los Angeles Farming & M. Co.* v. *Thompson*, 117 Cal. 594, 600 [49 Pac. 714]; *Kohn* v. *National Film Corp.*, 60 Cal. App. 112, 116 [212 Pac. 207].) This being so, the question to be determined upon this appeal would seem to be whether there is any substantial evidence in the record which would warrant a verdict favorable to the defendant county or a reduction of the amount awarded to the plaintiff under the judgment. We are decidedly of the opinion that the lower court properly granted the plaintiff's motion for a directed verdict. The district attorney, appearing as a witness for the plaintiff, testified, among other things, that during the month of July, 1925—the period covered by the rejected claims—he employed eight men, including the claimants, to do the character of work for which the claims involved herein were presented; that during that month these men were employed principally in "securing evidence in the detection of crime in regard to the violation of the liquor laws" but that "very usually there was other work they did during that time"; that they were employed "to detect the commission of crime and to secure evidence for the prosecution of criminal cases" generally; that a "big part of their work" was "raiding" places where intoxicating liquors were manufactured or sold; that the men were paid at the rate of five dollars a day during the time they were actually working and the cost of their meals and their hotel expenses when away from their homes; that this wage rate had for several years been paid by the county for this class of service; that "they had to use automobiles, as their work took them all over the entire county"; that he agreed

to pay each of them who used his own automobile at the rate of fifteen cents a mile; that the supervisors had fixed that rate "for the use of what they termed 'dry squad cars'"; that from three to five of such employees would ride in each automobile; that the dangers of the work were such that it was necessary for the employees to travel in groups for their own protection; that "there wasn't a day or an hour outside of the time they had to sleep but what there was work to do"; that at various times during the month of July, 1925, "anywhere from one to a dozen complaints of law violations were made daily; some were made by telephone, some are made in person by people calling at the office, some are made by letter"; that the character of these complaints was such as to require immediate action if the offenses reported were to be officially detected and investigated and diligently prosecuted; that the complaints coming into his office during July, 1925, were sufficient in number to keep the claimants "busy every hour of their employment and I could have used fifty per cent more if I could have gotten the men to work, I had that much work ahead of me"; that he entrusted to the county detective the immediate detail of dividing the men into squads and dispatching them to the scene of possible violations of the law; that "invariably if they were to enter buildings they had search-warrants"; that "sometimes if they know in advance of a car and person bringing it, they obtain search-warrants of the courts" to search automobiles; that "generally one man carries the search-warrant and the others assist him . . . searching and procuring the evidence"; that he "made no requests for their appointment as deputy sheriffs"; that as "a small accommodation" to the sheriff he would send one of the employees for a few minutes to take a prisoner from the county jail to "the justice of the peace, or bring him across to the courthouse"; and that he did not "know of any cars whatever that had been assigned to the use of the district attorney's office either during the month of July or any other month." At this point it may be said that all of the claimants had been deputized by the sheriff, but the record, on the whole, tends to indicate that they did not receive any compensation as such. Without attempting to give a synoptical statement of the testimony of each of the several claimants it may

be said that they testified, in substance, as to their employment by the district attorney to assist in the detecting of crime and the gathering of evidence to be used in the prosecution of criminal cases. Each also stated that his claim, as presented, was correct and represented only such sums as were owing to him for services actually rendered and expenses actually incurred in the county service under his appointment and assignment by the district attorney. The testimony of said claimants also discloses that much of their time was given over to detecting violations of the liquor law and securing evidence in such cases.

This summary of the evidence furnishes sufficient foundation upon which to predicate a holding that the plaintiff had produced ample evidence to sustain the burden resting upon him of establishing the necessity for and the reasonableness of the charges contained in the several claims sued upon. The defendant county utterly failed, in our opinion, to produce any evidence substantially conflicting with that offered by the plaintiff. In fact, practically all of its evidence was adduced by way of cross-examination of the plaintiff's witnesses. Such cross-examination did not serve to weaken, in any material respect, the effect of the direct testimony of said witnesses. As we have said, the absence of substantial conflict in the evidence justified the trial court's action in directing a verdict for the plaintiff.

■ We attach no particular significance to the fact that the claimants in the performance of their duties were required, at times, to trench upon the duties of other county officers in the matter, for instance, of serving warrants and making raids. In *Cunning* v. *Carr*, 69 Cal. App. 230, 233 [230 Pac. 987, 988], the plaintiff sought and had issued a writ of mandate compelling the auditor of Humboldt County to pay certain claims against said county, which claims had theretofore been passed upon and allowed by the board of supervisors. The claims represented sums alleged to be owing to the plaintiff therein or his several assignors for services rendered to the district attorney's office in the detecting of crime and the gathering of evidence to be used in criminal cases. Upon the appeal it was urged that the plaintiff's assignors "were really traffic officers and officers employed by the district attorney to enforce the provisions of the Volstead Act (27 U. S. C. A.), as adopted by the

Wright Act of this state'' (Stats. 1921, p. 79). In disposing of this contention the opinion declares that ''While the conclusion might be drawn from the testimony in this case and set forth in the transcript that the assignors of the respondent acted at times in the capacity of traffic officers, and also as what is popularly termed 'a dry squad' and at times made arrests, under the law of this state, it is the work to be performed or the duties to which one may be assigned that determines his status as an officer or an employee. The mere fact that an employee may perform services not coming strictly within the duties imposed upon him by reason of his employment, or which may be exercised by him in common with other citizens of the state, does not, it seems to us, change his status from that of an employee to that of an officer, or from that of an officer to that of an employee. . . .

''Were the assignors of the respondent performing services which the law casts upon sheriffs and constables, and so, in one sense, increasing their salaries by relieving them of the performance of duties required by law? Section 4157 of the Political Code requires the sheriff to preserve the peace, to arrest and take before the nearest magistrate all persons who attempt to, or who have committed a public offense, prevent and suppress affrays, etc., attend courts, serve processes, and perform certain other duties enumerated in the section. Section 4187 of the same code in relation to the duties of constables sets forth that such officers shall serve all processes, attend justice courts in their townships and act in certain other capacities. Neither one of said sections requires either a sheriff or any constable to act in the capacity of sleuth or detective. Thus it follows that if anyone is employed by the district attorney to perform services outside of the duties cast by law upon the sheriff or a constable, none of the provisions of the state constitution relating to the salaries of such officers are in any way affected, nor does the fact that such persons may go further and make arrests as private individuals may do, after having completed their investigations, in anywise cause their employment to trench upon the inhibitions of the constitution relating to the increase of the compensation of such officers by relieving them of the performance of certain duties.'' In the same case the court in speaking of sub-

division 2 of section 4307 of the Political Code, above quoted from, declares: "The section itself expressly authorizes the payment of all expenses necessarily incurred by the district attorney in the detection of crime and prosecution of criminal cases. It does not limit the employment for the purpose of detection of crime to any particular specified cases. The district attorney may not know, and probably does not know, in the first instance, the persons guilty of crime. If he did, there would be no necessity under the statute for employing someone to detect the criminal. The district attorney may be conscious that the penal laws of the state are being violated, and is yet absolutely unable to place his hand on the violator. That this is true in regard to violators of the motor vehicle laws and the liquor laws of the state does not render the employment of someone to detect the guilty parties any less within the provisions of the code section than if the circumstances coming to the attention of the district attorney indicated that someone had committed the crime of murder. In that case the statute gives the district attorney the authority to employ someone to detect the offender. The fact also that violators of the motor vehicle laws and the liquor laws are constant and continuous does not tie the hands of the district attorney in regard to the employment of someone to detect the offenders, but, on the contrary, increases the necessity and almost imperatively demands the exercise by the district attorney of the powers conferred upon him by the provisions of section 4307 of the Political Code." It may be said that the legislature, since the decision in *Cunning* v. *Carr, supra,* has amended subdivision 2 of section 4307 of the Political Code, in a manner not material to the instant cause, by omitting therefrom expenses incurred in detecting and procuring evidence of violations of the Motor Vehicle Act.

We find no merit in the appellant's contention that the employment of the claimants and the payment of their claims constitute an increase in the compensation of the county detective in violation of article XI, section 9 of the constitution. Subdivision 9 of section 4249 of the Political Code provides for the appointment of such officer by the district attorney of the appellant county. In *Bayley* v. *Garrison,* 190 Cal. 690, 692 [214 Pac. 871, 872], the follow-

ing is approved: "The general rule, however, seems to be that this constitutional prohibition against changing the salary of a public officer during his term of office applies only to officers who have a fixed and definite term, and does not apply to appointive officers, who hold only at the pleasure of the appointing power." To the same effect is *Harrold* v. *Barnum,* 8 Cal. App. 21, 23 [96 Pac. 104]. Therefore if it be assumed, without deciding, that the employment of the claimants herein results in an increase of the county detective's compensation, it cannot be said to violate the constitutional provision, for that officer is merely an appointive officer holding at the pleasure of the appointing power.

■ Nor do we find any merit in the appellant's further contention that the trial court erred in sustaining objections to two questions asked of a member of the board of supervisors as to the availability of county cars for county work. Objections to these questions were promptly interposed, and sustained, upon the ground that the evidence thus sought to be elicited was incompetent, immaterial, and irrelevant and not the "best evidence" upon the subject. We are of the opinion that evidence merely tending to show that the appellant might have had certain automobiles available for general county purposes would be immaterial to and inadmissible in an action of the nature of that here involved both because of the broad and comprehensive powers conferred upon the district attorney by the provisions of subdivision 2 of section 4307 of the Political Code and the peculiar character of the work to be performed by his office in the detecting of crime and the securing of evidence to be used in the prosecution of criminal cases. It cannot be denied that this work was, and is, such as demands the continuous presence and the immediate availability of the agencies necessarily required in the pursuit and apprehension of law violators. From the questions propounded to the witness it is evident that the evidence sought to be adduced would not have shown that certain automobiles had been purchased for and assigned to the exclusive use of the district attorney's office. In the absence of such a showing it cannot be said that the district attorney exceeded the bounds of propriety when, in conformity to the provisions of subdivision 2 of section 4307,

*supra,* he authorized the use of privately-owned automobiles. As already stated, the reasonableness of the charge therefor was established upon the trial. We find no error in any of the rulings complained of by the appellant.

The judgment appealed from is affirmed.

Rehearing denied.

All the Justices concurred.