[Civ. No. 15785. Fourth Dist., Div. Two. Apr. 22, 1977.]

CECIL HICKS, as District Attorney, etc., Plaintiff and Respondent, v. BOARD OF SUPERVISORS OF ORANGE COUNTY, Defendant and Appellant.

232

## COUNSEL

Adrian Kuyper, County Counsel, Charles B. Sevier, Deputy County Counsel, Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Herman F. Selvin and Peter C. Bronson for Defendant and Appellant.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, James G. Enright, Chief Deputy District Attorney, and Oretta D. Sears, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**MORRIS, J.**—Cecil Hicks, the District Attorney for Orange County, brought this action against the Orange County Board of Supervisors for writ of mandate to compel the said board to set aside that portion of a resolution adopted June 19, 1975, which ordered the transfer of 22 investigative positions from the district attorney's staff to the jurisdiction of the sheriff-coroner.

The determinative question presented is whether the board of supervisors of a general law county has the power to require the district attorney to exercise his investigative functions through the office of the sheriff-coroner.

The critical facts as found by the trial court are as follows:

The resolution of June 19, 1975, transferring investigative staff and supporting personnel from the district attorney to the sheriff, was not a budget action, but was a part of a reorganization plan. (Finding No. 5.)

Neither the duly adopted and published proposed budget nor the agenda for the final budget hearing (which sets forth items for inclusion or deletion) reflect or contemplate the deletion of 4 of the presently existing 6 senior attorney investigative positions and of 18 of the presently existing 32 investigator II positions from the district attorney's office, or the addition of 4 investigative sergeants to the presently existing 6 investigative sergeant positions and of 18 investigator II positions to the presently existing 36 to the sheriff's office. Furthermore, the evidence affirmatively shows that the addition of the positions to the sheriff's department and the deletion of those positions from the office of the

district attorney was never proposed or considered by the board as a budget item. (Finding No. 9.)

Mr. Thomas, the Orange County Administrative Officer, was directed by the chairman of the board of supervisors to outline a program for the transfer of all "overlapping" investigative services from the district attorney's office to the sheriff's department. (Finding No. 11.)

The study undertaken by Mr. Thomas at the chairman's request resulted in a report to the board on June 16, 1975, showing that there is no overlap in the investigative functions performed by the district attorney and the sheriff; that the 22 district attorney investigators assigned to the questioned areas of narcotics, fraud, organized crime and special assignments (homicide, grand jury investigation, Elections Code violation, etc.) comprise over one-half of the district attorney investigative staff assigned to criminal matters; that of the 6 investigators assigned to investigate organized crime, 1 is totally involved in trial preparation and the other 5 devote 30 percent of their time to trial preparation; that the 8 investigators assigned to investigate frauds devote 50 percent of their time to trial preparation; that the 3 investigators assigned to narcotics investigation devote 70 percent of their time to trial preparation and 30 percent to necessary liaison functions; that the 5 investigators assigned to special assignments devote 75 percent of their time to trial preparation of homicide cases, 23 percent to grand jury investigation, and 2 percent to assisting municipalities in the collection of evidence in homicide cases. (Finding No. 13.)

There was no evidence before the board that the workload of the district attorney investigators for the year 1975-1976 or that the number of investigative personnel necessary to handle the workload for the year 1975-1976 was or would be less than the number approved by the board as necessary for the year 1974-1975. There was no evidence before the board that showed the need for 22 additional sheriff investigators to handle precomplaint investigations. (Finding No. 14.)

The court made the further finding that the transfer of investigative and support personnel from the district attorney to the sheriff was made in furtherance of a plan to consolidate all county investigative functions under one agency; and that the transfer, although made during a hearing on the budget, was a transfer of functions from one agency to another and not an approval or disapproval of a budget item. (Finding No. 15(a) and (b).)

The board of supervisors at all times approved the functions performed by the 22 investigative and support personnel as necessary functions and expenses, and what the board termed a "deletion from the District Attorney's budget" was a transfer of functions intended to place those functions under the control of the sheriff. (Finding No. 17.)

Based upon the findings, the trial court concluded that the Orange County Board of Supervisors proceeded in excess of its jurisdiction when, by resolution of June 19, 1975, it transferred a portion of the district attorney's investigatory function from the district attorney's office to the sheriff's office under the guise of deleting positions and equipment from the budget of the district attorney and of adding the same positions and equipment to the budget of the sheriff.

The court ordered that a writ of mandate issue directing the board to vacate and set aside that portion of its resolution of June 19, 1975, which deletes certain personnel and equipment from the district attorney's office and adds the personnel and equipment to the sheriff's department, and directing the appropriate county officials to disregard the resolution and to permanently stay the implementation thereof.

It is from this judgment that appellant, Orange County Board of Supervisors, appeals.

■ Appellant contends that the power to delete and add county employee positions is vested in the board of supervisors. We agree.

The state Constitution expressly vests in the board of supervisors the power to prescribe the "number, compensation, tenure, and appointment of employees." (Cal. Const., art. XI, § 1, subd. (b).) State general law enacted pursuant to constitutional mandate provides that the board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees. (Gov. Code, § 25300.) In counties not having a county charter, such action may be taken by resolution of the board of supervisors as well as by ordinance. (*Id.*) Orange County does not have a county charter.

Pursuant to authority granted by Constitution article XI, section 7, and Government Code section 25126, the Board of Supervisors of Orange County has adopted ordinances providing that "The regulation of the method of employment, terms of employment, conditions of employ-

ment . . . of officers and employees of the County of Orange . . . shall . . . be fixed by resolution of this Board" (Orange County Code, § 1-3-2), and "The addition and deletion of positions shall be accomplished by action of the Board of Supervisors . . . and the adoption of class specifications for officers and employees of the County of Orange . . . shall be fixed by minute, order or resolution of the Board of Supervisors." (Orange County Code, § 1-3-3.)

Appellant next contends that the action of the board of supervisors fixing the number and conditions of employment of county employees, and the preparation and adoption of a county budget are legislative matters over which, when constitutional limits are not exceeded, the judiciary has no control. Again we agree.

■ Generally, a court is without power to interfere with purely legislative action, and when the Legislature has committed to a municipal body the power to legislate on a given subject, the court has no power to command or prohibit the exercise of the legislative function. (*Nickerson* v. *San Bernardino,* 179 Cal. 518, 522 [177 P. 465]; *Monarch Cablevision, Inc.* v. *City Council,* 239 Cal.App.2d 206, 211 [48 Cal.Rptr. 550].) The reason the court may not command specific legislative action is that such interference would violate the basic constitutional concept of separation of powers. (Cal. Const., art. III, § 3; *City and County of San Francisco* v. *Cooper,* 13 Cal.3d 898, 915 [120 Cal.Rptr. 707, 534 P.2d 403]; *City Council* v. *Superior Court,* 179 Cal.App.2d 389, 396 [3 Cal.Rptr. 796].)

■ Since the power to levy a tax is purely legislative, and since the budget is an indispensible prerequisite to a valid tax levy, the adoption of the budget is clearly a legislative function. (See also *Ryan* v. *Byram,* 4 Cal.2d 596, 600 [51 P.2d 872]; *McCabe* v. *Carpenter,* 102 Cal. 469, 470-471 [36 P. 836].) The fixing of the number of employees, the salaries and employee benefits is an integral part of the statutory procedure for the adoption of the county budget, the fixing of the tax rate, and the levy of taxes. (Gov. Code, §§ 29021.1, 29089, 29100, 29101.)

This legislative function may not be delegated to an executive officer, leaving no discretion in the governing board (*McCabe* v. *Carpenter, supra,* at pp. 470-473); and may not be controlled by the courts (*Myers* v. *English,* 9 Cal. 341, 349).

■ Finally, appellant contends that Government Code section 29601 does not limit the budgetary power of the board of supervisors. We agree.

Section 29601 provides in pertinent part as follows: "The following expenses of the district attorney and the sheriff are county charges:

"(a) Traveling and other personal expenses incurred in criminal cases arising in the county . . . .

"(b) All other expenses necessarily incurred *by either of them*:

"(1) In the detection of crime. . . .

"(2) In the prosecution of criminal cases, . . ." (Italics added.)

This section is unambiguous. All that it does is provide that the expenses necessarily *incurred* for the enumerated purposes are county charges. The adoption of the budget is a legislative determination for purposes of appropriation and tax levy for future expenditures. While the Government Code provisions for county charges, including section 29601, should alert a responsible board of supervisors to the need to appropriate funds to pay the charges authorized, these provisions do not and could not delegate the budgetary power to county executive officers. (*McCabe* v. *Carpenter, supra,* 102 Cal. 469, 470.)

We are not here confronted with expenses already incurred, and therefore, need not consider the remedies available to the district attorney in the event adequate funds have not been appropriated. (See *Cunning* v. *County of Humboldt,* 204 Cal. 31, 35 [266 P. 522]; *Rocca* v. *Boyle,* 166 Cal. 94 [135 P. 34]; see also *Niceley* v. *County of Madera,* 111 Cal.App. 731, 735-736 [296 P. 306].)

In pursuing the above arguments, the appellant has ignored the findings of the trial court.

The court found that the board action was not a deletion of employee positions, but an attempt to transfer a portion of the district attorney's functions under the guise of deleting positions.

The court found that the board action was not a budget action, but an attempt to implement a plan of reorganization which would place all investigative functions under the control of one agency.

The court found that the board of supervisors approved functions and expenses proposed for the existing 22 district attorney investigators and support personnel as necessary, but merely sought to transfer control of these functions.

■ If these factual findings are supported by substantial evidence, then it is necessary to consider whether the board is authorized by law to make such transfer of functions, or whether, as the trial court concluded, such action is in excess of the board's jurisdiction.

■ The fact that the board characterized its action as budgetary, or that the action was taken during a budget hearing is not determinative. The law respects form less than substance. (Civ. Code, § 3528.) In *State Board of Education* v. *Levit,* 52 Cal.2d 441 [343 P.2d 8], the Supreme Court held that a budget restriction on the expenditure of funds for certain named school textbooks was an invalid attempt by the Legislature to interfere with the constitutional authority of the State Board of Education to select textbooks. This was true even though the Legislature had included the restriction in the budget act under the guise of exercising the legislative right to determine the curriculum of the public elementary schools. (*Id.,* at pp. 465-466.) The nature of the proceeding must be determined from the substance of the action taken regardless of its designation. (See *Edson* v. *Southern Pacific R. R. Co.,* 144 Cal. 182, 188-189 [77 P. 984].) The end attained and not the form of the transaction must be considered by the court in determining its substance and legal effect. (*Cashman* v. *Root,* 89 Cal. 373, 384 [26 P. 883].)

The evidence upon which the trial court based the critical findings is as follows:

During the early part of 1975, the chairman of appellant board sent identical letters to respondent Hicks and to Sheriff Gates which read in pertinent part as follows: "During budget studies, the issue of investigators and law enforcement investigation responsibility became a question. I am therefore asking both the Sheriff's Office and the District Attorney's Office for information concerning this matter. Specifically, I'd like to know in which . . . field each of your investigators is used. It is also important for us to know if City, Sheriff and District Attorney's investigations overlap. We wish to know where one's responsibility ends and another begins." The response from the sheriff suggested that an overlap of investigative functions "appear to exist" in the investigation of "Homicide, Fraud, Narcotics and Intelligence (Organized Crime)." The

response from the district attorney indicated that investigations by his office in the above areas was limited to trial preparation and to investigations requiring multi-jurisdictional investigations over which the sheriff has no statutory jurisdiction.

Thereafter, Chairman Diedrich referred the matter to County Administrative Officer Thomas as follows: "As you know, there are investigative staffs in the Sheriff's Office and the District Attorney's office. The Sheriff has suggested that all overlapping investigative services be assigned to his office. I agree with this proposed action. Would you please identify the staffs assigned to the District Attorney for the purpose of Homicide, Fraud, Narcotics and Intelligence (Organized Crime) investigation and outline a program for the transfer of personnel."

It was in response to this request that Thomas made the study and report which forms the basis for the court's finding number 13, which detailed the time allocation of the district attorney's existing investigative staff. (*Ante.*) The court's finding is an accurate summary of this portion of the report.

On June 2, 1975, the county counsel, at the request of the county administrative officer, issued an opinion which concluded by stating: "In summary, it is our opinion that both officers have investigative responsibilities which are County-wide in scope and which are inherent in the proper performance of their statutory duties, and that *these responsibilities are not the proper subject of reassignment or interference by the governing body of a county,* although the latter does have budgetary and personnel controls over both officers. How the personnel and other necessary support is furnished these officers is in the discretion of the Board of Supervisors. Except where there is a direct need for deputies exercising the authority of the office, the Board could supply funds for independent contracting by either officer, give the officer the personnel or the support directly, or furnish such personnel or support through another office."

Although the report of the administrative officer showed that there were no overlapping investigative functions, the report did suggest possible alternatives for the board to adopt to effect a consolidation of functions, presumably to "furnish such personnel or support through another office." Alternative number one suggested the transfer of the 22 investigators from the district attorney to the sheriff, and recommended as follows: "If the Board decides to implement this alternative, *or any*

*other alternative involving the transfer of personnel from the District Attorney to the Sheriff,* it would be our recommendation that the Board direct the Sheriff and the [administrative officer] to come back within 6 months with an analysis of the overall workload *within the Investigation Division* and the actual number of investigative personnel necessary to handle the workload." (Italics added.)

Finally, the record of proceedings taken by the board of supervisors on June 19, 1975, relating to the transfer of personnel, removes any possible doubt as to the nature of the action taken.

As the trial court found, neither the published proposed budget nor the agenda for the final budget hearing suggest any deletion of these positions from the district attorney's budget or their inclusion in the sheriff's budget. The transcript of the proceedings reveals that the board at no time contemplated abolishing positions as being unnecessary. The sole question discussed was the transfer of investigative functions. The discussion ultimately culminated in a recommendation by board member Battin as follows:

"Mr. Chairman . . . I recommend that the Board transfer to the Sheriff twenty-two of the seventy-five investigators under control of [the] District Attorney and direct the [administrative officer] to study the feasibility of consolidating the entire investigative staff of the Sheriff and the District Attorney into one unit. . . . In sum, the Sheriff should not prosecute a case that he makes and the District Attorney should not make the cases he prosecutes. I recommend that we adopt Alternative One of the County Administrative Officer's report and take off from the District Attorney's budget the twenty-two investigators identified there, plus support personnel, vehicles and equipment and add these . . . personnel, equipment . . . etcetera to the Sheriff's budget. . . . I'll make that in the form of a motion." When asked whether he was recommending alternative number one, Battin stated, "Right . . . Alternative One calls for an . . . immediate . . . and I don . . . I'm not using the word transfer because . . . ah . . . County Counsel has indicated to me that there may be some problem with the word . . . ah . . . transfer. So I am saying delete from the District Attorney's budget and I'm saying add to the Sheriff's budget those twenty-two investigator positions . . . ." The vote was taken on this motion.

The procedure for adoption of a county budget is set forth in Government Code sections 29000-29093. Section 29040 provides for the

filing of estimates by each official in charge of a budget unit. Section 29061 provides for review, hearings and recommendation by the administrative officer. Thereafter, the tabulations containing the estimates as submitted, together with recommendations and comments of the administrative officer, are submitted to the board of supervisors for formal action. The resulting tabulation with the revisions, additions, and changes made by the board constitutes the "proposed budget." (Gov. Code, § 29064.) Government Code section 29080 provides for a public hearing pursuant to published notice, before adoption of the final budget. Prior to this hearing the board is required to publish notice that the proposed budget is available to taxpayers for examination and that taxpayers may be heard regarding the increase, decrease, or omission of any item, or for the inclusion of additional items. (Gov. Code, § 29066.) As found by the trial court, the agenda prepared for the board hearing pursuant to county ordinance contained no reference to the deletion or addition of the 22 investigative positions involved in the subsequent transfer.

The findings of the trial court are supported by substantial evidence.

Clearly the transfer of the investigative personnel was pursuant to a plan of reorganization and no part of the budgetary action. The function being performed by the personnel in question was approved as necessary by the appellant board both for the preceding fiscal year and at the time of the adoption of the proposed budget for 1975-1976.

At issue here is whether the board of supervisors may lawfully require the district attorney to perform his investigative functions through the office of the sheriff. A negative answer is indicated for the following reasons:

1. The district attorney is the public prosecutor, vested with the power to conduct on behalf of the people all prosecutions for public offenses. (Gov. Code, § 26500.) Except for the power of the electorate to remove him, his performance of these functions is subject only to the supervision of the Attorney General. (Cal. Const., art. V, § 13.)

The discretionary power vested in the district attorney to control the institution of criminal proceedings may not be controlled by the courts (*People* v. *Municipal Court,* 27 Cal.App.3d 193, 207 [103 Cal.Rptr. 645, 66 A.L.R.3d 717]), and it may not be conferred on another by the board of supervisors (*County of Modoc* v. *Spencer,* 103 Cal. 498, 500-501

[37 P. 483]). The district attorney is charged with the responsibility of assisting and advising the grand jury in its investigation into criminal matters (Gov. Code, § 26501; Pen. Code, § 917) and no one may institute criminal proceedings without the concurrence, approval, or authorization of the district attorney (Gov. Code, § 26501; *Rosato* v. *Superior Court,* 51 Cal.App.3d 190, 226 [124 Cal.Rptr. 427]).

■ 2. Investigation and the gathering of evidence relating to criminal offenses is a responsibility which is inseparable from the district attorney's prosecutorial function. That the district attorney is charged with the duty of investigating as well as prosecuting criminal activity has been recognized by an unbroken line of California cases. In *Cunning* v. *County of Homboldt, supra,* 204 Cal. 31, it was held that under section 4307 (repealed) of the Political Code[1] a district attorney had authority to employ persons to assist in the detection of crime and the gathering of evidence to be used in the prosecution of criminal cases, and that the claim for such services was a valid charge against the county even though not approved by the board of supervisors. (*Id.,* at pp. 32-33; see also *Cunning* v. *Carr,* 69 Cal.App. 230, 235 [230 P. 987].)

In *Pearson* v. *Reed,* 6 Cal.App.2d 277 [44 P.2d 592], dealing with a prosecutor's immunity from civil liability, it was held that the district attorney's function in determining whether to institute criminal proceedings is discretionary, that his authority to investigate the facts before acting is unlimited, and that the matter rests in his own discretion. (*Id.,* at p. 286; see also *People* v. *Municipal Court, supra,* 27 Cal.App.3d 193, 207.)

■ 3. The board of supervisors has no power to control the district attorney in the performance of his investigative and prosecutorial functions, and may not do so indirectly by requiring that he perform his essential duties through investigators who are subject to the control of another county officer.

The situation here is not unlike that considered by the court in *County of Modoc* v. *Spencer, supra,* wherein the board of supervisors had ordered that a private law firm be employed as assistant counsel with the district

---

[1]Section 4307 (Stats. 1897, ch. 277, § 228, subd. 2, pp. 575-576) provided as county charges: "The traveling and other personal expenses of the District Attorney, incurred in criminal cases arising in the county . . . and all other expenses necessarily incurred by him in the detection of crime and prosecution of criminal cases . . . ." A similar provision is now contained in Government Code section 29601.

attorney to aid in the prosecution of criminal cases. The Supreme Court held that the board's action was void and created no legal claim against the county, stating: "[I]t never was intended that the board of supervisors should be permitted to control or interfere with criminal prosecutions or with the district attorney in their management. The district attorney in the discharge of the duties of his office performs two quite distinct functions. He is at once the law officer of the county and the public prosecutor. While in the former capacity he represents the county and is largely subordinate to, and under the control of, the board of supervisors, he is not so in the latter. In the prosecution of criminal cases he acts by the authority and in the name of the people of the state." (*County of Modoc* v. *Spencer, supra,* 103 Cal. at p. 501.)

■ The board of supervisors has no inherent powers; the counties are legal subdivisions of the state, and the county board of supervisors can exercise only those powers expressly granted it by Constitution or statutes and those necessarily implied therefrom. (Cal. Const., art. XI, § 1; *People* v. *Langdon,* 54 Cal.App.3d 384, 388-389 [126 Cal.Rptr. 575]; *Byers* v. *Board of Supervisors,* 262 Cal.App.2d 148, 155 [68 Cal.Rptr. 549].) An examination of the provisions of the applicable statutes and of the Constitution reveals that the board of supervisors has been granted no power of control over the district attorney in the exercise of his discretionary duties. Although the board of supervisors has the power to prescribe the number, compensation, tenure, and appointment of county employees (Gov. Code, § 25300), the board has no power to itself appoint deputies or assistants to the district attorney (*County of Modoc* v. *Spencer, supra,* 103 Cal. at pp. 500-502); although the county board of supervisors has authority to supervise county officers in order to insure that they faithfully perform their duties (Gov. Code, § 25303), the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed (*People* v. *Langdon, supra,* 54 Cal.App.3d 384, 390), and although the board of supervisors exercises control over the county budget (Gov. Code, §§ 29021.1-29101), the board may not, by failing to appropriate funds, prevent the district attorney from incurring necessary expenses for crime detection as county charges (Gov. Code, § 29601; *Cunning* v. *County of Humboldt, supra,* 204 Cal. at pp. 33-35).

■ Appellant concedes the existence of the prosecutorial duty, even including certain investigatory functions. However, appellant's argument seems to be that respondent's only recourse, in view of the board's action, is to incur whatever expenses are necessary beyond his depart-

mental budget, and then seek reimbursement pursuant to Government Code section 29601. To hold otherwise, it is argued, would be to permit the district attorney to exercise budgetary control contrary to law. (*Taliaferro* v. *Locke,* 182 Cal.App.2d 752, 756 [6 Cal.Rptr. 813].) What this argument ignores is that the appellant board of supervisors had completed its budgetary action with respect to these positions when it approved the number of personnel needed to perform the existing investigatory function. Subsequent to the approval of the proposed budget, the board made no determination affecting the budget, other than an attempt to change the budget unit to which the personnel would be assigned.

Government Code section 29011 defines "Budget Unit" to mean "that classification of the expenditure and reserve requirements of the financial operational plan into appropriately identified accounting or cost centers deemed necessary and desirable for purposes of control of the financial operations thereof." The section further provides that *"Except as otherwise provided by law,* budget units may be devised at the discretion of the board as follows: (a) An organizational unit such as, a department, a court, an office, a division of a department or an office, an institution, a board or commission, or any other administrative unit. (b) A service activity or unit. (c) A specific expenditure program. (d) A specific type of expenditure . . . ." (Italics added.)

It is apparent from the budget documents and other evidence in this case that the appellant board had elected to devise budget units on an organizational unit basis. The budget units involved in this dispute being the offices of the district attorney and of the sheriff. The proposed budget as approved by the board and as published and made available to taxpayers pursuant to Government Code section 29066 classified the expenditures according to these budget units.

It is equally apparent from the report of the administrative officer and the transcript of the board proceedings that it was the ultimate aim of the board to consolidate the investigative functions of the various departments engaged in criminal investigations into a single separate administrative unit. In the words of the chairman, "Establish a pool of investigators for the entire county by consolidating the investigative staff of the District Attorney, the Sheriff-Coroner and the Public Defender into one unit." That was alternative number four under the recommendations of the administrative officer. Alternative number one, the one adopted for immediate implementation, provided for interim transfer of

the 22 investigators and support personnel from the district attorney's office to the sheriff as an administrative unit. That this was indeed an attempted transfer of functions was made clear by board member Battin, in making the motion which was immediately adopted, when he stated, "[T]he power to investigate and the power to prosecute should not be in the same hands. Investigation should be in the hands of . . . the law enforcement officer. The chief law enforcement officer is the Sheriff. Prosecution should be in the hands of the public prosecutor, the District Attorney. In sum, the Sheriff should not prosecute a case that he makes and the District Attorney should not make the cases he prosecutes. I recommend that we adopt Alternative One of the County Administrative Officer's report and take off from the District Attorney's budget the twenty-two investigators . . . and add these . . . to the Sheriff's budget. In addition, I recommend that we direct the County Administrative Officer to study the feasibility of consolidating the entire investigative staff of the Sheriff and the District Attorney into one unit. I'll make that in the form of a motion." The motion was adopted, after the chairman clarified that the recommendation related to alternative one and alternative four.

The trial court properly found that this action was not a budgetary action, and was correct in concluding that the appellant board proceeded in excess of its jurisdiction in attempting to transfer the control of the district attorney's investigative functions from the district attorney to the sheriff.

Although the board of supervisors has wide discretion in budgetary matters, including discretion in devising budgetary units and classifying expenditures pursuant to Government Code section 29011, the law does not vest the board with authority to transfer control of one officer's statutory function to another officer.

The judgment is affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.