TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |
|---|---|
| OPINION | : |
| | :       No. 91-201 |
| of | : |
| | :       <u>AUGUST 13, 1991</u> |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

THE HONORABLE FRANK S. PETERSEN, COUNTY COUNSEL, DEL NORTE COUNTY, has requested an opinion on the following question:

May a general law county appoint as county counsel a partner in a private law firm and contract for that firm to assist the county counsel in the performance of his or her duties?

CONCLUSION

A general law county may appoint as county counsel a partner in a private law firm and contract for that firm to assist the county counsel in the performance of his or her duties, if certain limitations and qualifications are met.

ANALYSIS

The board of supervisors of a general law county may appoint a county counsel under the authorizing provisions of section 27640 of the Government Code.[1] A county counsel serves a four year term and is removable only for cause. (§ 27641.) A county counsel essentially performs the civil or nonprosecutorial duties otherwise required to be performed by the district attorney (§§ 26529, 27642), although various specific duties of the office are set forth by statute. (See §§ 27640-2768.)

While the law is silent on the point, there would appear to be no legal objection to a county counsel engaging in private practice. (Cf. *County of Madera* v. *Gendron* (1963) 59 Cal.2d 798 [district attorney may engage in private practice where not prohibited by statute]; *Mousseau* v.

---

[1]All section references are to the Government Code unless otherwise specified. A county need not have a county counsel. All legal services may be performed for the county by the district attorney. (§§ 26500-26543.)

*Garey* (1926) 200 Cal.201 [county officer may engage in additional county employment absent statutory prohibition].)[2]

The question presented for analysis is whether a general law county may appoint as county counsel a partner in a private law firm and contract for that firm to assist the county counsel in the performance of his or her duties. As to compensation, all county counsel matters (other than complex litigation) would be furnished in return for a fixed monthly fee, whether performed by the county counsel personally or by his or her associates. For complex litigation, an hourly rate would be provided in the contract, with the county having the option of referring the matter to the county counsel's firm or to another law firm. We conclude that such a contract may be entered into by the board of supervisors under the general authority of sections 25203, 27644 and 31000, subject to certain limitations.[3]

Section 25203 provides:

"The board [of supervisors] shall direct and control the conduct of litigation in which the county . . . is a party; by a two-thirds vote of all the members, the board may employ counsel to assist the district attorney, county counsel, or other counsel . . . in the conduct of such actions. . . ."

Section 27644 states:

"The board of supervisors shall furnish the county counsel with such assistants as will enable him to perform properly the duties of his office."

Section 31000 provides:

"The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department . . . . Such contracts shall be with persons specially trained, experienced, expert and competent to perform special services. The special services shall consist of services, advice, education or training . . . [and] shall be in financial, economic, accounting . . . engineering, legal . . . services."[4]

The history, operation, and relationship of these statutory provisions were discussed at length in the recent case of *Harvey* v. *County of Butte* (1988) 203 Cal.App.3d 714. In *Harvey*, the court examined a county reorganization plan in which the county counsel and his deputies would be available to provide legal advice on routine inquiries from county departments. As to other advice matters, outside legal counsel specializing in such matters would be used. For litigation, the county counsel would decide whether to assign the matter to his deputies, or if so complex, whether

---

[2]This conclusion is subject to the power of a board of supervisors to declare private practice an incompatible activity pursuant to section 1126. Additionally, as discussed below, the county counsel would be required to avoid conflicts of interest between his or her county duties and his or her private practice.

[3]Although somewhat unique as to a county, cities for many years have had so-called "contract" city attorneys who maintian separate private practices. (See generally *Montgomery* v. *Superior Court* (1975) 46 Cal.App.3d 657, 670-671; 66 Ops.Cal.Atty.Gen. 382, 383, fn. 2 (1983).)

[4]Section 53060 is similar to section 31000 for "local agencies" in general.

to contract out the matter with the board's approval. The court concluded that these procedures would be proper under the statutes outlined above, subject to various limitations.

As to litigation, the *Harvey* court held that section 25203, as interpreted in earlier cases, provided the authority for the county to contract out any case in which the county had an interest, even without participation by the county counsel. The court stated:

> ". . . we conclude that section 25203 governs the circumstances in which boards of supervisors may contract with outside counsel for litigation services. The only constraint imposed by this section is that the specific services must be authorized by a two-thirds majority vote; . . . The check against improvident expenditures for such purposes is the requirement of recurrent authorizations by an extraordinary majority of the Board. Presumably if contracting for outside legal services for litigation proves to be an extravagant method of meeting that need, the members of the board of supervisors will change course or face the adverse consequences in the electoral arena." (*Id.* at pp. 726-727.)

Accordingly, a board of supervisors may contract out all litigation on a case by case basis where outside counsel will represent the county with or without participation of the county counsel. (See *Woolwine* v. *Superior Court* (1920) 182 Cal. 388, 390.)

Under the proposed contractual agreement, the county counsel may handle all litigation whether routine or complex. The board of supervisors, by a two-thirds vote pursuant to section 25203, may authorize the law firm to handle specific litigation. The law firm would then appear not as county counsel, but as an independent contractor representing the county.

As to advice matters, the *Harvey* court relied upon *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, in concluding that a county may contract out for truly specialized services that are not of the type potentially available "in house." The court stated:

> "*Jaynes* holds that there is no authority to contract for outside legal services unless such authority is expressly conferred upon the contracting agency or the services are unavailable `in house' for reasons beyond the agency's control. (193 Cal.App.2d at p. 54.) It asserts two supporting principles. First, wasteful duplication of expense may otherwise occur. (*Ibid*.) Second, the statutes assigning the obligation to perform such services to public officers should be construed as vesting such responsibility and authority in the designated public officers. (*Id*., at p. 55.) Hence, if the county counsel is assigned the duty to provide certain legal services, that allocation should not be undercut by contracts with outside counsel unless necessary. (See *Ibid*., also cf., e.g., 15 Ops.Cal.Atty.Gen. 46, 48-49 (1950), `It is apparent that the Legislature has imposed upon the board of supervisors of the various counties a duty to budget annually sufficient moneys not only to pay the salary of the district attorney and county counsel, but also to furnish each of them with deputies, assistants, clerks, office space and other facilities necessary in order to enable each of them to properly perform the duties imposed upon him by law.')

> ". . . . . . . . . . . . . . . . . . . .

> "As to matters other than litigation, the policy adopted by the Board can be read as consistent with the provisions of section 31000, which authorizes contracts for *special services* `with persons specially trained, experienced, expert and competent to perform the special services.' The principal purpose of an authorization

for engaging `special services' is to obtain services which are unavailable from public sources." (*Id.* at pp. 724-725.)

Whether services are truly "specialized services" is in each case a question of fact. (See *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 61; *Jaynes* v. *Stockton*, *supra*, 193 Cal.App.2d 47, 53.) Accordingly, each contracting out for special services must be done on a case by case basis.

Under the proposed agreement, the county counsel may personally give advice and opinions to all county officers and departments. If the law firm is to act independently in advice matters, it must do so pursuant to section 31000. In such cases, the board of supervisors must determine on a case by case basis that the advice is truly a "specialized service" that the county counsel could not potentially provide "in-house."

With respect to the law firm members "assisting" the county counsel, we note that "[e]very county . . . officer . . . may appoint as many deputies as are necessary for the prompt and faithful discharge of the duties of his office" (§ 24101) but that the board of supervisors itself has no power to appoint deputies (see *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 242). Hence, the fact that the board of supervisors may provide in the contract in question that the other members of the firm shall assist the county counsel (see § 27644) in no way makes them deputy county counsels. The county counsel would have to appoint his or her associates as deputies. (See § 24102; see also generally §§ 1190-1194.) Without such appointments, they could not act in place of the county counsel. (See 63 Ops.Cal.Atty.Gen. 710, 712-714 (1980).)

Accordingly, under the proposed contract, the law firm associates may "assist" but not act independently of the county counsel (e.g., by attending board and commission meetings at which they render on the spot advice or by making court appearances on behalf of the county counsel) unless they are deputized.

Two other statutory schemes are relevant to our inquiry. The Political Reform Act of 1974 (§§ 81000-91015) prohibits public officials from making or participating in the making of any governmental decision in which they know or have reason to know they have a financial interest. (§ 87100.) Here, the issue would be whether a decision made by the county counsel would have a "material financial effect" upon his or her law firm. (See Cal. Code Regs., tit. 2, §§ 18700 -18703.5).

Another conflicts of interest statute of concern would be section 1090. It prohibits a public official from being financially interested in any contract made by him or her in an official capacity by a board or commission of which he or she is a member. Significantly, the courts have construed section 1090 liberally so as to cover not only the board or officer who actually enters into the contract, but also any governmental officer or employee who participates in the making of the contract by way of advice, preliminary negotiations, or the like. (See 63 Ops.Cal.Atty.Gen. 19 (1980); 53 Ops.Cal.Atty.Gen. 163 (1970).)

Both the Political Reform Act of 1974 and section 1090 would require analysis with respect to the proposed activities in question. Each imposes restrictions that must be considered in structuring the county's contract with the law firm.

In summary, we conclude that a general law county may appoint as county counsel a partner in a private law firm and contract with that firm to assist the county counsel in the performance of his or her duties, if certain qualifications and limitations are met.

* * * * *

* * * * *