TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-903 |
| of | : | |
|  | : | May 3, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
|  | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
|  | : | |

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Does a county board of supervisors have the legal authority to govern the actions of an elected sheriff concerning the manner in which the sheriff's budget allotment is to be spent, including the manner in which personnel will be assigned?

THE HONORABLE GARY T. YANCEY, DISTRICT ATTORNEY, COUNTY OF CONTRA COSTA, has requested an opinion on the following question:

Does a county board of supervisors have the legal authority to govern the actions of an elected district attorney concerning the manner in which the district attorney's budget allotment is to be spent, including the manner in which personnel will be assigned?

CONCLUSION

A county board of supervisors is not authorized to govern the actions of a sheriff or district attorney concerning the manner in which their respective budget allotments are expended or the manner in which personnel are assigned.

ANALYSIS

The present inquiry concerns whether a county board of supervisors[1] may govern the actions of a sheriff or district attorney with respect to the manner in which budget allotments for

_____

[1]It will be assumed for purposes of this analysis that the county in question is a general law county.

1.                                                                          93-903

those offices are expended, including issues of personnel deployment.[2]  Generally, a county possesses and can exercise only such powers as are granted to it by the Constitution or by statutes, together with those powers as arise by necessary implication from those expressly granted.  (Gov. Code, § 23003; *Byers* v. *Board of Supervisors* (1968) 262 Cal.App.2d 148, 157; 70 Ops.Cal.Atty.Gen. 227, 228 (1987).)[3]  Some county powers are exercised by the board of supervisors, while others are exercised by county officers and agents acting under "authority conferred by law."  Section 23005 states: "A county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or authority conferred by law."

In examining the scope of a county's powers, we look first to the Constitution.  Article XI, section 1, subdivision (b), of the Constitution states as follows:

> "The Legislature shall provide for county powers, an elected sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county.  Except as provided in subdivision (b) of section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members, but the ordinance prescribing such compensation shall be subject to referendum.  The Legislature or the governing body may provide for other officers whose compensation shall be prescribed by the governing body.  The governing board shall provide for the number, compensation, tenure, and appointment of employees."[4]

In carrying out its constitutional mandate, the Legislature has provided for an elected governing board in each county and has prescribed its powers.  (§§ 25000-26400.)  Section 25300 states specifically:

> "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees.  Except as otherwise required by Section 1 or 4 of Article XI of the California Constitution, such action may be taken by resolution of the board of supervisors as well as by ordinance."

Section 25207 more generally provides:

> "The board may do and perform all other acts and things required by law not enumerated in this part, or which are necessary to the full discharge of the duties of the legislative authority of the county government."

---

[2]The questions refer to an "elected" sheriff and to an "elected" district attorney.  For purposes of this analysis, we find no talismanic significance respecting the manner of selection of these officers.  (See *People* v. *Kelsey* (1868) 34 Cal. 470; *Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789, 794-795; 33 Ops.Cal.Atty.Gen. 180, 182 (1959).)

[3]Unidentified section references herein are to the Government Code.

[4]The Constitution also provides that charter counties are to provide in their charters for an elected sheriff, an elected district attorney, and an elected governing board, and for the compensation of such officers.  (Cal. Const., art. XI, § 4; see *Beck* v. *County of Santa Clara, supra,* 204 Cal.App.3d at 796-799.)

Finally, of particular significance here regarding the powers of a board of supervisors, section 25303 states as follows:

> "The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection.
>
> "This section shall not be construed to affect the independent and constitutionally and statutorily designed investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative prosecutorial function of the district attorney of a county.
>
> "Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff."

With respect to the authority and functions of a district attorney, the Legislature has defined various duties and responsibilities. (§§ 26500-26543.) Section 26500 states:

> "The district attorney is the public prosecutor, except as otherwise provided by law.
>
> "The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses."

A district attorney is expressly authorized and directed to institute proceedings before magistrates for the arrest of persons charged or reasonably suspected of public offenses, to attend and advise the grand jury, and to draw all indictments and informations. (§§ 26501, 26502.)

The Legislature has also enacted a statutory scheme defining the powers and duties of a sheriff. (§§ 26600-26778.) Section 26600 generally provides:

> "The sheriff shall preserve peace, and to accomplish this object may sponsor, supervise, or participate in any project of crime prevention, rehabilitation of persons previously convicted of crime, or the suppression of delinquency."

A sheriff is expressly authorized and directed to investigate public offenses which have been committed and to arrest and take before a magistrate all persons who have committed a public offense. (§§ 26601, 26602.)

Both a district attorney and a sheriff are county officers authorized to appoint as many deputies as are necessary for the prompt and faithful discharge of their respective duties. (§§ 24000, 24101.)[5]

With these statutory duties in mind, we commence our analysis of the questions with a case which interpreted laws enacted under the original Constitution. In 1855, El Dorado County retained the services of a private law firm to prosecute certain parties accused of murder. The Eleventh Judicial District Court determined that the board of supervisors had no authority to make such a contract. (*Newell & Williams* v. *El Dorado County* (1856) 1 Labatt 102.) The court explained its decision in part as follows:

". . . [I]t is the duty of the County to see that the laws are executed and criminals punished; but in the exercise of this duty, it goes no farther and can go no farther, that to furnish the money, officers and agents, necessary to accomplish the object. In the performance of this duty each County is restricted and controlled within certain limits, and those are fixed by Statute. It, too, is created by Statutes, they are its charter and beyond their provisions it cannot go. It possesses no power except such as has been expressly delegated and such as may be necessary to carry into effect the delegated powers.

"In looking to the Statutes for the purpose of ascertaining the extent of these powers, and the manner in which they are exercised, we find that Counties, like other corporations, conduct their affairs by means of certain officers, and these have certain duties assigned them, covering the whole field of criminal prosecutions. . . .

". . . A District Attorney is paid a liberal salary to attend to the prosecution of all criminal cases . . . .

"The theory of the law is, that these officers and their deputies are able and competent to discharge, to the satisfaction of the public and in such a manner as to meet its demands, all of the various duties that have been imposed upon them. If the Legislature has made a mistake, it is not the fault of the County or of the Board of Supervisors, any more than it would be of an agent who had not been clothed with powers sufficiently ample to attend properly to the interests of his principal." (*Id.*, at pp. 104-105.)

Nearly four decades later, a similar question arose concerning the authority of the Modoc County Board of Supervisors to employ counsel on behalf of the county to assist the district attorney in the prosecution of criminal cases. In *County of Modoc* v. *Spencer* (1894) 103 Cal. 498, 501, the Supreme Court analyzed the issues as follows:

". . . [I]t is strongly urged in effect that it was within the inherent general power of the board, in the absence of special provision, to provide for the proper prosecution of these cases. But we know of no such inherent or undefined power in the board of supervisors; their powers being purely statutory, their every act must find its warrant in the statute, either expressly or by necessary implication. [Citations.] The legislature having specified certain cases in which such power may

_____

[5]However, "[a] county district attorney prosecuting a criminal action within a county, acts as a *state* officer, exercising ultimately powers which may not be abridged by a county board of supervisors." (*Graham v. Municipal Court* (1981) 123 Cal.App.3d 1018, 1022.)

be exercised, there is no implication that she intended it to be exercised in others; *expressio unius est exclusio alterius*. In fact, an examination of all the provisions of the statute bearing upon the subject leads to the conclusion that it never was intended that the board of supervisors should be permitted to control or interfere with criminal prosecutions or with the district attorney in their management. The district attorney in the discharge of the duties of his office performs two quite distinct functions. He is at once the law officer of the county and the public prosecutor. While in the former capacity he represents the county and is largely subordinate to, and under the control of, the board of supervisors, he is not so in the latter. In the prosecution of criminal cases he acts by the authority and in the name of the people of the state."[6]

In the two cases set forth above, a county board of supervisors attempted to employ private attorneys to conduct prosecutorial functions; such employment relationship would place in the hands of the supervisors the attendant right to control the conduct and assignment of the attorneys under contract. The present inquiry focuses upon the extent of control retained by a board of supervisors over the manner in which funds allocated to the offices of the district attorney and sheriff are expended, including the manner in which personnel are deployed. As in the foregoing cases, the primary issue here concerns the authority of a board of supervisors to assume the prerogative of an employer, thereby diminishing necessarily the control exercised by the district attorney and sheriff over the conduct and deployment of those who perform the duties of their respective offices.

In *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, the Court of Appeal held that the Orange County Board of Supervisors was not authorized to transfer 22 investigative positions from the district attorney's office to the sheriff's office. The court stated as follows:

"The board of supervisors has no inherent powers; the counties are legal subdivisions of the state, and the county board of supervisors can exercise only those powers expressly granted it by Constitution or statutes and those necessarily implied therefrom. (Cal. Const., art. XI, § 1; *People* v. *Langdon*, 54 Cal.App.3d 384, 388-389; *Byers* v. *Board of Supervisors*, 262 Cal.App.2d 148, 155.) An examination of the provisions of the applicable statutes and of the Constitution reveals that the board of supervisors has been granted no power of control over the district attorney in the exercise of his discretionary duties. Although the board of supervisors has the power to prescribe the number, compensation, tenure, and appointment of county employees (Gov. Code, § 25300), the board has no power to itself appoint deputies or assistants to the district attorney (*County of Modoc* v. *Spencer, supra*, 103 Cal. at pp. 500-502); although the county board of supervisors has authority to supervise county officers in order to insure that they faithfully perform their duties (Gov. Code, § 25303), the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed (*People* v. *Langdon, supra,* 54 Cal.App.3d 384, 390), and although the board of supervisors exercises control over the county budget (Gov. Code, §§ 29021.1-29101), the board may not, by failing to appropriate funds, prevent the district attorney from incurring necessary expenses for crime detection as county charges (Gov. Code, § 29601); *Cunning* v. *County of Humboldt*, 204 Cal. 31, 33-35)." (*Id*., at p. 242.)

---

[6]The nature and extent of a board's control over the district attorney when he is acting in the capacity of the county "law officer" is defined in sections 25203 and 31001; virtually all counties now have these civil law functions preformed by the county counsel (§§ 17640-27648). We are concerned here, on the other hand, with a district attorney acting as public prosecutor.

Following the *Hicks* decision, the last two paragraphs of section 25303, *supra,* were added (Stats. 1977, ch. 599, § 1), essentially codifying the holding of the court. By the express terms of this amendatory language, section 25303 may not be construed to affect the constitutionally and statutorily granted powers of a sheriff or district attorney.

In our view, it is clear that control by a board of supervisors over the manner in which funds allocated to the sheriff and district attorney are to be expended, including the assignment of personnel, would impair the exercise by those officers of their constitutionally and statutorily defined powers. Such supervisory control would directly conflict with the admonition that "the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed . . . ." (*Hicks* v. *Board of Supervisors, supra,* 69 Cal.App.3d at 242; see also *People* v. *Langdon* (1976) 54 Cal.App.3d 384, 388-390 [county clerk].) Consistent with the *Hicks* rationale, the Supreme Court has recently ruled that the supervisory authority of a board of supervisors over the county assessor is limited to ensuring the faithful performance of the duties of that office, and does not permit the board to control, directly or indirectly, the manner in which the duties are performed. (*Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1113, fn. 9.)

With specific regard to the office of sheriff, the court in *Brandt* v. *Board of Supervisors* (1978) 84 Cal.App.3d 598, 602, expressly found:

"We note the board not only had no duty but also had no right to control the operation of the jail; a board of supervisors has no legal authority to use its budgetary power to control employment in or operation of the sheriff's office . . . . Only the sheriff has control of and responsibility for distribution and training of personnel and the specific use of the funds allotted to him."

In sum, the distinction to be drawn is between the power of a board of supervisors to appropriate county funds and the power of a sheriff or district attorney to manage the expenditure of the funds so appropriated. The grant of authority given to a board of supervisors by the Legislature is unaffected by allowing the sheriff and district attorney to perform their constitutional and statutory duties. A board's specific responsibility to "provide for the number, compensation, tenure, appointment and conditions of employment of county employees" (§ 25300) is simply an inherent aspect of the preparation and adoption of the county's budget, which in turn is an indispensable prerequisite to a valid tax levy, a clearly legislative function. (*Ryan* v. *Byram* (1935) 4 Cal.2d 596, 602; *Hicks* v. *Board of Supervisors, supra,* 69 Cal.App.3d at 235; *Beck* v. *County of Santa Clara, supra,* 204 Cal.App.3d at 800-801; *County of Butte* v. *Superior Court* (1985) 176 Cal.App.3d 693, 698-700; see also *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 108, 110; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 234.) However, the budget process is integral and complete upon adoption of the budget; it does not encompass the management of budgetary resource allotments the responsibility for which is conferred by the Constitution or laws upon other county officers either expressly or by necessary implication. (*Beck* v. *County of Santa Clara, supra,* 204 Cal.App.3d at 800-801; *County of Butte* v. *Superior Court, supra,* 176 Cal.App.3d at 698-700; *Hicks* v. *Board of Supervisors, supra,* 69 Cal.App.3d at 242-244; cf. *State Board of Education* v. *Levit* (1959) 52 Cal.App.2d 441, 461-462.) Consequently, a board's authority to provide "conditions of employment" (§ 25300) cannot be interpreted to confer ongoing control over the actions to be taken by personnel previously assigned to the sheriff or district attorney.

Accordingly, it is concluded that a county board of supervisors is not authorized to govern the actions of a sheriff or district attorney concerning the manner in which their respective budget allotments are expended or the manner in which personnel are assigned.

* * * * *

93-903

* * * * *