[Civ. No. 44707. First Dist., Div. One. Mar. 18, 1980.]

EZRA LEE PARROTT, as Citizens' Assistant, etc.,
Plaintiff and Respondent, v.
ELIJAH B. ROGERS, as City Manager, etc., et al.,
Defendants and Appellants.

COUNSEL

Michael Lawson, City Attorney, and Theodore R. Lakey, Deputy City Attorney, for Defendants and Appellants.

Gillin, Jacobson & Wilson, Edwin J. Wilson, Jr., and Ballachey, Meade, Duane & Lyman for Plaintiff and Respondent.

OPINION

ELKINGTON, Acting P. J.—Section 27 of the Charter (Charter) of the City of Berkeley (City) has long provided for the office of city manager, "who shall be responsible for the efficient administration of all departments." He is appointed, and subject to removal, by the city council, and as relevant to the case before us, is given "the following powers and duties":

"(a)   To see that all laws and ordinances are duly enforced,. . .

"(b)   Except as otherwise provided in this Charter, to appoint, discipline or remove all officers and employees of the City, subject to the Civil Service provisions of this Charter. . . . Except for the purpose of inquiry, the Council and its members shall deal with the administrative service solely through the City Manager, and neither the Council nor

any member thereof shall give orders to any of the subordinates of the City Manager, either publicly or privately.

"(c)   To exercise control over all departments, divisions and bureaus of the City Government and over all the appointive officers and employees thereof.

"(f)   To make investigations into the affairs of the City, or any department or division thereof, or any contract, or the proper performance of any obligation running to the City."

Recently, 1975, section 47 was added to the Charter by the City's electorate. It increased the City's officialdom by establishing the office of "Citizens' Assistant." That official was to be appointed, and subject to removal, by the city council.

Section 47, as here relevant, provided: "The Citizens' Assistant shall...be responsible for processing citizen requests for information and assistance, and for investigating complaints on any governmental matter, regardless of jurisdiction. [¶] In the performance of these duties, the Citizens' Assistant may inquire into any aspect of government, and any department, agency, officer or employee, and shall have the power to compel the production of all public records kept by a municipal agency and the testimony of witnesses by subpoena. [¶] The Citizens' Assistant shall submit an annual report to the City Council and such interim reports as may be deemed appropriate, commenting upon the functioning of city government and recommending appropriate policies or changes in policy."

Ezra Lee Parrott was regularly appointed to the newly created office. Thereafter, in the course of investigating the complaint of a citizen concerning the City's employment practices, he sought production by a department of the City of certain records relating to the citizen's evaluation, by the department, on her application for employment. On advice of the city attorney and the city manager, the department refused to recognize the citizens' assistant's "jurisdiction over this matter" which "concerns Personnel matters," or to produce the records for inspection or otherwise, or "to answer any questions regarding or relating to [the] Subpoena Duces Tecum since it is our opinion that he has no jurisdiction."

Thereupon Ezra Lee Parrott, as citizens' assistant, commenced the instant action for, among other things, "a declaration of the rights and duties of the parties herein with respect to the controversy. . . ." The superior court entered judgment (termed Order) adjudicating that, *"in the performance of his duties"* (italics added) Ezra Lee Parrott, as citizens' assistant, possessed:

"1. The power to compel the production of all public records kept by the municipal agency;

"2. The power to compel the testimony of witnesses by subpena;

"3. The power to compel the production of all internal affairs bureau records;

"4. The power to compel the production of all personnel records;

"5. The power to compel the production of all records kept by the City of Berkeley regardless of jurisdiction, unless such records come within the specific privileges authorized by § 1040 of the *Evidence Code*."

The judgment also allowed reasonable attorney fees to the citizens' assistant, under Code of Civil Procedure section 1021.5, for services rendered in the action.

The defendants of plaintiff's action, the city manager and city attorney, have appealed from the judgment.

We have considered the record and the arguments and briefs of the parties. Our conclusion is that, with certain modifications, the judgment must be affirmed. We state our reasons.

■ Defendants' principal contentions may reasonably be narrowed to an argument that the City of Berkeley's Charter does not confer upon the citizens' assistant the powers and duties claimed by him and as determined by the superior court's summary judgment. They insist that such a grant of power and duty as claimed, and found by the trial court, is fatally inconsistent with that reposed by the Charter in the city manager.

The City's Charter may be likened to a statute, subject generally to the same rules of statutory interpretation. We are, as was the trial court, accordingly to be guided by the rule of Code of Civil Procedure section 1858: "In the construction of a statute..., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." And: "'Courts have nothing to do with the wisdom of laws....'" (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 544 [63 Cal.Rptr. 21, 432 P.2d 717].)

Applying these rules we discern that Charter section 27 confers upon the city manager the power and duty to *manage* the City without interference. The power and duty *includes* the management control over all City departments, divisions, bureaus, appointive officers and employees, and includes the appointment, discipline, and removal of employees. In this we discern no substantial conflict with the citizens' assistant's responsibility for "processing citizen requests for information and assistance, and for investigating complaints," or his Charter-declared right to inquire into any aspect of government, and any department, agency, officer or employee, by the production of public records or otherwise. Nor does administrative interference reasonably result from the citizens' assistant's duty to submit an "annual report to the City Council and such interim reports as may be deemed appropriate,..."

Indeed, we observe no grant of authority whatever to the citizens' assistant to engage in, or interfere with, any function of management or control reposed in the city manager by the Charter. Nor does he have power to rectify, or order rectification of, complaints made to him by citizens; he may do no more than report, "commenting upon the functioning of city government and recommending appropriate policies or changes in policy."

We do note a duality of duty to make *investigations* "into the affairs of the City" but that duty reposed in the citizens' assistant may not reasonably be considered conflict, or interference, with the city manager's prerogative of *management* and *control*.

■ We advert now to the remaining contention of defendants: "The Public Records Act exempts from disclosure to the citizens' assistant the subpoenaed information and documentation."

Initially, we iterate that the citizens' assistant is a City official holding an office created by the City's Charter. The law clothes him with official dignity and prestige comparable with that of defendants and other of the City's officials. And since a city, like other corporations, may act only through its officials, agents, and employees, his official acts are those of the City itself.

We are advised of no law or other authority which precludes investigation or inquiry, into any aspect of the acts or records of a city's government, by a city official or employee otherwise authorized by law to do so for the purpose, as noted, of reporting or commenting to the city council or other department "upon the functioning of city government and recommending appropriate policies or changes in policy." Such a disclosure by one official or department to another is not a "public disclosure" as contended by defendants. In the exercise of his functions the citizens' assistant, like all other of the City's officials and employees, is subject to the provisions of any law forbidding public, or private, disclosure of designated records or information to "citizens" (under Charter § 47) or others.

The superior court will modify the judgment: by amending paragraph 5 to read, "The power to compel the production of all records kept by the City of Berkeley regardless of jurisdiction"; by adding paragraph 6 as follows, "In the exercise of such power he is bound by any law which forbids disclosure by him of information so obtained to persons, including 'citizens' as the term is used in the City of Berkeley's Charter section 47"; and by fixing and awarding reasonable attorney fees to plaintiff for services rendered on this appeal (Code Civ. Proc., § 1021.5). As so modified, the judgment is affirmed.

Newsom, J., and Grodin, J., concurred.