BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE TONY RACKAUCKAS, DISTRICT ATTORNEY, ORANGE COUNTY, has requested an opinion on the following question:
Is a court order, search warrant, or subpoena duces tecum required before a county coroner may release the medical or psychiatric records of a deceased person to police or district attorney investigators?
 CONCLUSION
A court order, search warrant, or subpoena duces tecum is not required before a coroner may release the medical or psychiatric records of a deceased person to police or district attorney investigators having jurisdiction over the criminal investigation.
 ANALYSIS
The question presented for analysis concerns access by police and district attorney investigators to the medical and psychiatric records of a deceased person that are in the possession of the county coroner. May the records be disclosed by the coroner without the issuance of a court order, search warrant, or subpoena duces tecum? The issue arises when the coroner determines that a person has died under circumstances which suggest that the death was a homicide, and the coroner must notify the appropriate law enforcement agency. Government Code section27491.1[1] provides:
 "In all cases in which a person has died under such circumstances as to afford a reasonable ground to suspect that the person's death has been occasioned by the act of another by criminal means, the coroner, upon determining that such reasonable grounds exist, shall immediately notify the law enforcement agency having jurisdiction over the criminal investigation. Notification shall be made by the most direct communication available. The report shall state the name of the deceased person, if known, the location of the remains, and all other information received by the coroner relating to the death."
If the report submitted to law enforcement officials must include medical and psychiatric records in the possession of the coroner, no court order, search warrant, or subpoena duces tecum would be necessary. Does section 27491.1 obviate the need to utilize these discovery procedures? We conclude that it does.
First, it is evident that the phrase "all . . . information received by the coroner relating to the death" is sufficiently broad to include medical and psychiatric records. The only discretion to be exercised by the coroner is the determination whether the information is related to the death. If it is, disclosure is required. If it is not, the information may be withheld. Although section 27491.1 uses such terms as "notify," "notification," "report," and "state," we believe that the coroner has no authority to otherwise evaluate or edit the information to be disclosed. "All" information would include, for example, the original medical and psychiatric records or copies thereof. Anything less would not be "all" the information received by the coroner. Furthermore, we believe this to be a continuing obligation, otherwise the apparent intent of the Legislature would not be served.
Our construction of the terms of section 27491.1 comports with well recognized principles of statutory interpretation. "To interpret statutory language, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997)14 Cal.4th 627, 632.) The first step in determining the Legislature's intent "is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]" (People v. Valladoli (1996)13 Cal.4th 590, 597.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (Harris v. Capital Growth Investors XIV (1991) 53 Cal.3d 1142, 1159.)
The obvious legislative purpose of section 27491.1 is to make available "immediately" to law enforcement officials the information in the possession of the coroner relating to the death of a person "occasioned by criminal means." No purpose would be served in such circumstances in withholding information already in the hands of the coroner. The Legislature's insistence upon the sharing of the information by the two local agencies with related investigative responsibilities[2]
prevents an unnecessary duplication of efforts and delay in completing the criminal investigation. The Legislature's use of the word "immediately" concerning when law enforcement officials are to be notified indicates a legislative intent that the information be provided promptly to allow meaningful assistance in the criminal investigation. Accordingly, section27491.1 requires nothing less than submitting to the appropriate law enforcement officials the original or copy of any medical record or psychiatric record "relating to the death" of the person.
Next we consider the meaning of the statutory phrase "the law enforcement agency having jurisdiction over the criminal investigation." Normally, the agency having jurisdiction would be the police department if the death occurred in a city and the sheriff's department if the death occurred in an unincorporated area. Indeed, as originally enacted, section 27491.1 required that the report be directed "to the chief of police, or other head of the police department of the city or city and county in which the death occurred, or to the sheriff of the county if the death occurred outside the incorporated limits of a city." (Stats. 1959, ch. 1537, § 1.) In 1985, the statute was amended (Stats. 1985, ch. 304, § 3) to broaden the disclosure requirement to any "law enforcement agency having jurisdiction over the criminal investigation."
We believe that the district attorney's office may reasonably be included in the phrase "the law enforcement agency having jurisdiction over the criminal investigation."
In 75 Ops.Cal.Atty.Gen. 223, 227 (1992), we observed:
 "Public prosecutors are frequently involved in the conduct of investigations, including the creation of investigative plans, the supervision of investigative personnel, the execution of search warrants, as well as the interview of witnesses. The investigation of criminal and criminal-related conduct constitutes an inherent aspect of prosecution which is clearly authorized. [Citations.]"
In Hicks v. Board of Supervisors (1977) 69 Cal.App.3d 228, 241, the court stated:
 ". . . Investigation and the gathering of evidence relating to criminal offenses is a responsibility which is inseparable from the district attorney's prosecutorial function. That the district attorney is charged with the duty of investigating as well as prosecuting criminal activity has been recognized by an unbroken line of California cases. In Cunning v. County of Humboldt, supra, 204 Cal. 31, it was held that . . . a district attorney had authority to employ persons to assist in the detection of crime and the gathering of evidence to be used in the prosecution of criminal cases. . . ."
Hence, district attorney investigators may reasonably be considered to be part of a "law enforcement agency having jurisdiction over the criminal investigation." (See §§ 26500-26501; 78 Ops.Cal.Atty.Gen. 192, 196 (1995); 70 Ops.Cal.Atty.Gen. 183, 185 (1987).) The fact that a police department or sheriff's department may also have jurisdiction does not defeat or undermine the investigative responsibilities of the district attorney. A coroner may disclose information to more than one law enforcement agency having jurisdiction. Otherwise, the evident purpose of the statute — to facilitate information gathering by law enforcement officials investigating the death — would be subverted.
Consistent with our interpretation of section 27491.1 are the provisions of the Confidentiality of Medical Records Act (Civ. Code, §§ 56-56.37). Under this legislative scheme, a provider of health care is specifically authorized to give medical information "to the county coroner in the course of an investigation by the coroner's office." (Civ. Code, § 56.10, subd. (c)(6).) The coroner in turn is authorized by the legislation to give the medical information received to police and district attorney investigators "as specifically required or permitted . . . by law" (Civ. Code, § 56.13), such as required by the provisions of section 27491.1.
A coroner is also authorized to issue subpoenas and subpoenas duces tecum to obtain evidence to "aid in determining the circumstances, manner, and cause of death of the decedent." (§ 27498.) With specific regard to obtaining medical and psychiatric records by subpoena, section 27491.8 provides:
 "(a) When the coroner seeks a confidential communication of a deceased person that is privileged under Article 6 (commencing with section 990) or Article 7 (commencing with section 1010) of Chapter 4 of Division 8 of the Evidence Code, by means of a subpoena or subpoena duces tecum, for the purposes of inquiry into, and determination of, the circumstances, manner, and cause of death as set forth in section 27491, or for the sole purpose of being introduced as evidence at a coroner's inquest proceedings, the coroner shall provide notice to the decedent's personal representative personally or at his or her last known address, not less than 15 days prior to the date the records are to be delivered to the presiding judge of the superior court. The notice shall inform the personal representative that he or she may provide to the court a written objection to the disclosure or to any part thereof, on or before the date for delivery thereof to the court. The custodian shall deliver the records to the presiding judge of the superior court in a confidential manner. The presiding judge shall examine the records in camera. If there is good cause, the presiding judge shall direct the custodian to disclose to the coroner those portions of the records which the judge determines are relevant to the coroner's inquiry or inquest.
 "(b) A communication made available to the coroner pursuant to this section is confidential, except insofar as it is introduced into evidence at a coroner's inquest proceeding, and shall not be distributed or made available to any other person, agency, firm, or corporation.
 "(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(d) After the investigation or inquest has terminated, the court shall order the records thereof to be sealed as necessary to protect the confidentiality of the decedent's medical or mental health information."
Medical records are the subject of "Article 6" of the Evidence Code, and psychiatric records are the subject of "Article 7." Hence, when a coroner has obtained such records pursuant to section 27491.8, a judge has already reviewed the records and made a determination that they "are relevant to the coroner's inquiry or inquest." (§ 27491.8, subd. (a).)
Do subdivisions (b) and (d) of section 27491.8 preclude a coroner from turning over medical and psychiatric records to police and district attorney investigators as required by section 27491.1? Or may these two statutes be reconciled and their terms harmonized?
A statute is to be interpreted "in context, examining other legislation on the same subject, to determine the Legislature's probable intent. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist., supra, 14 Cal.4th at 642.) "`[S]tatutes must be harmonized, both internally and with each other, to the extent possible.'" (Woods v. Young (1991) 53 Cal.3d 315, 323.) Although "when a general and particular provision are inconsistent, the latter is paramount to the former" (Code Civ. Proc., § 1859), the rule that the specific controls the general "applies only when the two sections cannot be reconciled" (People v. Wheeler (1992) 4 Cal.4th 284,293). "In construing a statute, a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose." (California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133,1147.) Finally, "[c]ommittee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist., supra, 14 Cal.4th at 646.)
In examining the perceived conflict between sections 27491.1 and27491.8 in light of the above principles, we first note that medical and psychiatric records voluntarily obtained by a coroner (Civ. Code, § 56.10, subd. (c)(6)) must be turned over to police and district attorney investigators under the terms of section 27491.1. What purpose would be served by treating differently such records when obtained by a subpoena? In the latter situation, the decedent's personal representative has been given a judicial hearing, and a judge has determined that the records are relevant to the coroner's inquiry. The Legislature's admonition to "immediately" turn over the records to law enforcement officials (§ 27491.1) would be thwarted by a broad reading of the directive to seal the records.
The unreasonableness of such an interpretation of section 27491.8
is apparent by considering that the duties of the county coroner and district attorney may be combined by county ordinance. (§ 24300, subd. (m).) As previously mentioned, the coroner, police, and district attorney have similar and related duties, with the coroner's responsibility to assist "those who are charged with the detection and prosecution of crime." (Mar Shee v. Maryland Assurance Corp., supra,190 Cal. at 4.) The coroner, district attorney, and sheriff are all part of the same government entity, the county. The county acts through its officials, and the acts of its officials are those of the county itself. (See Parrott v. Rogers (1980) 103 Cal.App.3d 377, 383.) We view the coroner and district attorney investigators as part of the same "team," and "decline `to draw a distinction between different agencies under the same government. . . .'" (See United States v. Auten (5th Cir. 1980)632 F.2d 478, 481; see also In re Brown (1998) 17 Cal.4th 873, 879.)
Significantly, the release of the information to the police and district attorney investigators would not constitute a loss of confidentiality. The records would still be subject to the disclosure prohibition when in the possession of the criminal investigators. (§ 6254, subd. (f); Williams v. Superior Court (1993) 5 Cal.4th 337,348-362; Rivero v. Superior Court (1997) 54 Cal.App.4th 1048, 1052-1060; see also Parrott v. Rogers, supra, 103 Cal.App.3d at 383 [disclosure to city investigator of confidential records maintained by another city department does not constitute "public disclosure" and remains "subject to the provisions of any law forbidding public, or private, disclosure of designated records or information"]; 72 Ops.Cal.Atty.Gen. 159, 166 (1989); 71 Ops.Cal.Atty.Gen. 1, 5 (1988); 66 Ops.Cal.Atty.Gen. 128, 130 (1983) [district attorney not required to obtain court order to gain access to confidential personnel records of police officer].)
We have examined the legislative history of section 27491.8 in some detail. The statute was enacted in 1991. (Stats. 1991, ch. 1092, § 1.) According to the report of the Assembly Committee on Public Safety for its hearing of May 21, 1991, the legislation was proposed at the request of the California Coroners Association of California to relieve any concern a physician or psychiatrist might have regarding confidentiality when a patient has died and the coroner is in the process of determining the cause of death. The report states in part:
 "1) Purpose. According to the author, under existing law, with certain exceptions, confidential communications between a patient and physician, or between a patient and a psychotherapist, are privileged. Present exceptions do not include a coroner's formal inquest or other inquiry. This bill provides exceptions to the physician-patient privilege when confidential information is needed by a coroner.
 "2) Helpful to Coroner. Boyd G. Stephens, M.D., Chief Medical Examiner, San Francisco indicates there is an increasingly common issue with problems of suicide or elderly abuse in which a physician is aware of some information that would directly affect the outcome of the hearing. Generally, most physicians are very concerned about confidentiality and with the need of when confidentiality ends versus the need to fulfill the requirements for public health and other legal reasons. Information needs to be revealed that directly pertains to the patient's death.
 "According to Dr. Stephens, most typically, inquests deal with cases that are other than natural in a manner so that these issues, when they do arise, usually have some background or basis to suspect that the death may not be natural.
 "3) Advantages. Under this bill, the cause and manner of death may be much more likely to be accurate, and much of the coroner's time may be . . . saved."
The legislative history of section 27491.8 indicates no intent by the Legislature to hinder or delay the criminal investigation of the death by law enforcement officials. No suggestion is made that the legislation is to be construed to conflict with the directives of section 27491.1. Immediate disclosure by the coroner to law enforcement officials required by the latter statute is not to be affected by the legislation.
We thus interpret the general term "agency" in subdivision (b) of section 27491.8 as not including the particular law enforcement agency having jurisdiction over the criminal investigation specified in section 27491.1. Such an "outside" agency subject to the terms of section 27491.8 would not be charged with investigating the circumstances of the death and would not have independent statutory authorization to obtain the information. After disclosure is made as required by section 27491.1, the records may be sealed pursuant to the terms of section 27491.8, subdivision (d). In this manner, the two statutes may be reconciled in light of their legislative purposes, while giving reasonable meaning to each.
No other statute appears relevant to our inquiry. We thus conclude that a court order, search warrant, or subpoena duces tecum is not required before a coroner may release the medical or psychiatric records of a deceased person to police or district attorney investigators having jurisdiction over the criminal investigation.
[1] All references hereafter to the Government Code are by section number only.
[2] In Mar Shee v. Maryland Assurance Corp. (1922) 190 Cal. 1, 4, the Supreme Court noted that "the primary purpose of [a coroner's] inquest under our laws is to provide a means for the prompt securing of information for the use of those who are charged with the detection and prosecution of crime."