TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 20-101 |
| of | : | August 5, 2021 |
| ROB BONTA | : | |
| Attorney General | : | |
| LAWRENCE M. DANIELS | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE FIONA MA, TREASURER OF THE STATE OF CALIFORNIA, has requested an opinion on two questions relating to "base recording fees," which are fees collected by a county recorder for recording and indexing documents pursuant to Government Code section 27361, subdivision (a).

### QUESTIONS PRESENTED AND CONCLUSIONS

1.     May a county recorder recover base recording fees that were deposited in the county's general fund?

No.  A county recorder may not recover base recording fees that were deposited in the county's general fund because these fees belong to the county as a whole, not to the recorder separately.

2.     May the recorder recoup any base recording fees that exceed the costs of recording and indexing services by offsetting other charges that the recorder collects for the county?

1

20-101

No.  The recorder has no right to base recording fees, including "excess" base recording fees.  Therefore, the recorder may not use an offset to recover them indirectly.

## BACKGROUND

Every year, a county's board of supervisors determines the budget of each county department, including the budget of the county recorder.  The budget allocates county revenues, which are maintained in various funds.  Revenues that may only be used for specific purposes—such as certain fees or taxes—are typically channeled into special funds for dedicated functions.  Revenues that may be used for any county purpose are usually deposited into the county's general fund.

This opinion involves the allocation of certain revenue collected by county recorders.  County recorders charge "base" recording fees for recording and indexing each page of a document, plus additional recording fees in specified circumstances.  Under Government Code section 27361, subdivision (a), the general purpose of base recording fees is to reimburse the county for the costs of recording and indexing services.

The questions presented here arise out of one county recorder's assertion that the county was required to maintain base recording fees in a special fund dedicated to the recorder's office, instead of in the county's general fund.  This county recorder also asserts that he is entitled to recoup several years' worth of base recording fees that exceeded the recorder's costs in those years.  These assertions have raised threshold questions about whether a county may deposit base recording fees in the general fund and whether and how a recorder may recover them.  To answer these questions, we begin by reviewing the applicable law regarding county budgeting, county recorders, and recording fees.

By statute, a county's board of supervisors must "adopt an annual budget" and identify "[t]he means of financing the budget requirements."[1]  "[T]he board of supervisors

---

[1] Gov. Code, §§ 25214, subd. (a), 29089, subd. (g); see Cal. Code Regs., tit. 2, § 958, subd. (a) (defining "budget" as "[a] comprehensive plan of financial operations embodying an estimate of proposed requirements for expenditure appropriations and provisions for reserves for a given period and the means of financing such requirements, as expressed in the official actions of the board"); *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1517 ("The approval of a county budget is a fundamental legislative function and the power and obligation to enact a county's budget is vested by law in the board of supervisors").  Under specified procedures, the board may make revisions to the county budget.  (Gov. Code, §§ 29125, 29130; see generally 60 Ops.Cal.Atty.Gen. 76, 76-80 (1977) [discussing the statutory procedures for post-budgetary appropriation transfers].)

2

has wide discretion in budgetary matters, including discretion in devising budgetary units and classifying expenditures."[2] The board must create "those funds as are necessary for the proper transaction of the business of the county, and may transfer money from one fund to another, as the public interest requires."[3] Also, "[t]he income and revenue paid into the county treasury shall be at once appropriated to and kept in separate funds."[4] The county's "general fund" is "[t]he fund that is available for any authorized purpose and which is, therefore, used to account for all revenues and all expenditures not provided for in other funds."[5] In financial matters, a county must follow uniform accounting practices as set forth in the State Controller's accounting regulations and manual.[6]

---

[2] *Hicks v. Bd. of Supervisors* (1977) 69 Cal.App.3d 228, 244. In accounting parlance, a budget unit is an organizational part—often, but not always, a department—that is authorized to receive and expend appropriations. (See Cal. Code Regs., tit. 2, §§ 943, subd. (c) [defining "budget unit" as "that classification of the expenditure and reserve requirements of the Budget into appropriately identified accounting or cost centers deemed necessary or desirable for control of the financial operations"]; Sacramento County, Office of Budget and Debt Management, Key Budget Terms, at https://bdm.saccounty.net/Pages/KeyBudgetTerms.aspx ["Budget units are often departments and the terms are sometimes used interchangeably, but not all budget units are departments and the budgets for some departments are contained in multiple budget units"].)

[3] Gov. Code, § 25252; see Cal. Code Regs., tit. 2, § 910 (defining "fund" as "[a] sum of money or other resources segregated for the purpose of carrying on specific activities or attaining certain objectives in accordance with special regulations, restrictions, or limitations and consisting of an independent fiscal and accounting entity").

[4] Gov. Code, § 29300.

[5] Cal. Code Regs., tit. 2, § 921, subd. (a); see Gov. Code, § 29301 ("The general fund consists of money received into the treasury and not specially appropriated to any other fund").

[6] Gov. Code, § 30200; Cal. Code Regs., tit. 2, §§ 904, 956; *Community Development Com. v. County of Ventura* (2007) 152 Cal.App.4th 1470, 1488; 63 Ops.Cal.Atty.Gen. 512, 519, fn. 7 (1980); Office of the Controller, Accounting Standards and Procedures for Counties (2020), at https://sco.ca.gov/Files-ARD-Local/ASP_manual.pdf; see generally Cal. Code Regs., tit. 2, div. 2, ch. 2, subchs. 12.5, §§ 901-1027.6.

3

The board of supervisors' budgeting power may not be delegated to a county officer.[7] A county officer may not incur or pay any obligations exceeding the amount appropriated by the board for each budget unit.[8] A county recorder is a county officer.[9]

A county recorder's duties include filing instruments, papers, and notices associated with land transactions, births, deaths, and marriages; and certifying, copying, and maintaining records of official county documents.[10] In addition, the recorder must index each recorded document so that a member of the public may readily locate it upon a search.[11] We have previously observed that "[t]he Legislature has established a comprehensive system governing the recording of documents."[12] The "general purposes

---

[7] *Hicks v. Board of Supervisors, supra,* 69 Cal.App.3d at p. 236 ("While the Government Code provisions for county charges . . . should alert a responsible board of supervisors to the need to appropriate funds to pay the charges authorized, these provisions do not and could not delegate the budgetary power to county executive officers"), citing *McCabe v. Carpenter* (1894) 102 Cal. 469, 470.

[8] Gov. Code, § 29120; see Cal. Const., art. XVI, § 18 (generally prohibiting a county from incurring debt or liability exceeding that year's revenue absent the assent of two-thirds of county voters); Cal. Code Regs., tit. 2, § 958, subd. (e) (defining "appropriations" as "[a]uthorizations by the board to make expenditures and to incur obligations for specific purposes"); *Albright v. City of South San Francisco* (1975) 44 Cal.App.3d 866, 902 ("An expenditure of public funds is regulated solely by constitutional and statutory provisions and must be confined to public purposes").

[9] Gov. Code, § 24000, subd. (g). The requester specifies that the recorder is elected (as opposed to appointed), but that fact is irrelevant here. (77 Ops.Cal.Atty.Gen. 82, 82, fn. 2 (1994) ["The questions refer to an 'elected' sheriff and to an 'elected' district attorney. For purposes of this analysis, we find no talismanic significance respecting the manner of selection of these officers"].)

[10] See generally Civ. Code, §§ 1169-1220, 2940–2941; Code Civ. Proc., § 2103; Fam. Code, §§ 300, 359, 423; Gov. Code, §§ 27201–27399; Health & Saf. Code, §§ 103525, 103535, 103625, 103650; Cal. Assn. of Counties, County Structure, County Clerk, at https://www.counties.org/county-office/county-clerk.

[11] Gov. Code, §§ 27230-27265; see *First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1316-1317 (explicating the "two distinct functions" of recording and indexing).

[12] 63 Ops.Cal.Atty.Gen. 905, 905 (1980); see Gov. Code, tit. 3, div. 2, pt. 3, ch. 6, § 27200 et seq.; Gov. Code, § 27320 (describing the required manner of recording documents).

4

of such laws are to protect purchasers of property from monetary loss by providing a system of notification of the various interests in such property, and to preserve and provide access to important records and documents."[13]

Upon providing these services, a county recorder generally must "charge and collect for the use of his or her county and pay into the county treasury on or before the fifth day of each month the fees allowed by law."[14]  To this end, a county recorder must collect various fees,[15] including charges for recording and indexing,[16] document certification,[17] copies,[18] and vital records searches and certificates.[19]

## ANALYSIS

**1.** **May a county recorder claim base recording fees from the county's general fund?**

As noted, base recording fees are the recording and indexing fees collected by the county recorder pursuant to Government Code section 27361, subdivision (a):

> The fee for recording and indexing every instrument, paper, or notice required or permitted by law to be recorded shall not exceed ten dollars ($10) for recording the first page and three dollars ($3) for each additional page, to reimburse the county for the costs of services rendered pursuant to this subdivision . . . .[20]

---

[13] 63 Ops.Cal.Atty.Gen., *supra*, at p. 907, internal citations omitted.

[14] Gov. Code, § 24350; see also Health & Saf. Code, §§ 102285 (the county recorder is the local registrar of marriages), 103610 ("The money collected by the local registrar shall be paid by him or her into the county or city treasury").

[15] Gov. Code, § 27360.

[16] Civ. Code, § 1471, subd. (f); Gov. Code, §§ 27361, 27361.2, 27361.3, 27361.4, 27361.8, 27361.9, 27372, 27387, 27388, 27388.1, 27397; Rev. & Tax. Code, § 480.3.

[17] Gov. Code, § 27364; Health & Saf. Code, § 103625.

[18] Code Civ. Proc., § 2103, subd. (d); Gov. Code, § 27366; Health & Saf. Code, § 103625.

[19] Health & Saf. Code, §§ 100425, 103525, 103525.5, 103625, subd. (f), 103650; Pen. Code, § 14251.

[20] Gov. Code, § 27361, subd. (a); see Gov. Code, § 27279 (defining "instrument" in this

5

Subdivision (b) of section 27361 mandates that $1 of the fee for each additional page "shall be deposited in the county general fund."[21] And subdivision (c) mandates that $1 of the fee for the first page and $1 of the fee for each additional page must exclusively support the "modernized creation, retention, and retrieval of information in each county's system of recorded documents."[22] Consequently, the only question is how to allocate the remaining portion of these recording fees—up to $9 for the first page and up to $1 for each additional page.

We are asked whether, if this remaining portion of the base recording fees is deposited in the county's general fund—which also finances other county departments besides the recorder's office—the recorder may rightly demand such fees from the county. As we will explain, the recorder is not entitled to recover these fees from the county. We arrive at this conclusion by applying well-settled principles of statutory interpretation.

When construing a statute, our goal is to ascertain legislative intent to effectuate the purpose of the law.[23] In determining that intent, we first turn to the words of the statute, giving them their plain meaning.[24] We interpret these words in the context of the statutory framework.[25] If the statutory language is not ambiguous, then we follow the plain meaning

---

context as "a written paper signed by a person or persons transferring the title to, or giving a lien on real property, or giving a right to a debt or duty"). Section 27361, subdivisions (a)(1) and (a)(2)—not at issue here—are "additional fees" that the recorder "may charge" for recording documents deviating from specified print and dimensions, respectively. Section 27361, subdivision (d), specifies another fee that the recorder also "may charge," for the "social security number truncation program." (Gov. Code, § 27361, subd. (d)(1).)

[21] Gov. Code, § 27361, subd. (b). Despite the direction in subdivision (b) that $1 of the charge for recording each additional page be placed in the general fund, subdivision (b)'s mandate differs from that of subdivision (a) in two key respects. First, subdivision (b) declares no purpose for the $1, whereas subdivision (a) declares that its purpose is "to reimburse the county for the costs of services rendered pursuant to this subdivision." Also, subdivision (b) explicitly requires that its portion be deposited in the general fund, whereas subdivision (a) does not speak to this question. Nonetheless, as explained below, the portion of subdivision (a) collected for county reimbursement may properly be deposited in the general fund.

[22] Gov. Code, § 27361, subd. (c).

[23] *People v. Jefferson* (1999) 21 Cal.4th 86, 94.

[24] *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.

[25] *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.

6

without needing to resort to extrinsic sources.[26]  Otherwise, we may consider the statute's legislative history in determining legislative intent.[27]

We accordingly examine Government Code section 27361, subdivision (a) (section 27361(a)) in light of the entire statute in discerning its meaning.  Section 27361(a) provides that the base recording fees are "to reimburse the county for the costs of services rendered pursuant to this subdivision[.]"  To "reimburse" is "to make repayment to for expense or loss incurred" and "to pay back; refund; repay."[28]  The base recording fees are thus collected to repay the county for the expenses it incurred for the costs of services under section 27361(a).[29]  Section 27361(a) therefore plainly conveys that the fees are collected for the county, not for the recorder.  And neither section 27361(a) nor any other law empowers the recorder to recover these fees.[30]  Instead, as detailed above, the board of supervisors determines the amount of the recorder's appropriations.

---

[26] *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.

[27] *ZB, N.A. v. Super. Ct.* (2019) 8 Cal.5th 175, 189.

[28] The Random House Dict. of the English Language (2d ed. unabridged 1987) p. 1625, col. 2; accord, https://www.merriam-webster.com/dictionary/reimburse (to reimburse is "to pay back to someone:  repay" or "to make restoration or payment of an equivalent to").

[29] These costs may comprise not only the recorder's direct costs but the indirect costs to the county of overhead and operating expenses as well, including "rent, heat, light, supplies, [and] management and supervision."  (Office of the Controller, Accounting Standards and Procedures for Counties, *supra*, at pp. 602, 622; see *Cal. Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 166-174 [discussing "wide range" of indirect costs of recorder's copying fees, including "'accounting, budgeting, payroll preparation, personnel services, purchasing, and centralized data processing,'" quoting Ed. Code, § 33338, subd. (b)(2)].)

[30] See 65 Ops.Cal.Atty.Gen. 321, 325 (1982) (as a county official, a recorder "has only such powers as have been conferred by law").

Moreover, the legislative history of section 27361(a) corroborates the statute's plain meaning that the base recording fees belong to the county as a whole, not to the recorder separately. Previously, section 27361(a) set the base recording fees for the first page at a flat rate of $4 and each additional page at a flat rate of $3, and it did not name any purpose for these fees.[31] In 2009, through Senate Bill No. 676 (2009-2010 Reg. Sess.) (Senate Bill 676), the Legislature amended section 27361(a) in two ways.[32] First, it increased the base recording fee that a county may charge for the first page to a maximum of $10 and modified the charge for each additional page to a maximum of $3.[33] Second, it gave a specific purpose to the base recording fees by inserting the language "to reimburse the county for the costs of services rendered pursuant to this subdivision[.]"[34]

The legislative record reveals that the Legislature's goal in enacting Senate Bill 676 was to more fully reimburse counties by charging the users of certain services more so that taxpayers who do not use these services would not have to foot the bills for them. Senate Bill 676 increased the amounts authorized to be charged for base recording fees and other county fees.[35] The committee reports for Senate Bill 676 describe the bill as a means for the county to recover the costs of specific services.[36] The author's statement in support of the bill bemoaned that county taxpayers were being shorted because the fees charged were not supporting the costs of the services provided:

[31] See Stats. 2008, ch. 179, § 102.

[32] Stats. 2009, ch. 606, § 2.

[33] *Ibid.*

[34] *Ibid.*

[35] Stats. 2009, ch. 606, §§ 1-12; see, e.g., *id.* at § 5 (Pen. Code, § 1203.1, subd. (l) [increasing administrative fee from 10 percent to 15 percent of victim restitution]), § 6 (Pen. Code, § 1203.1b, subd. (h) [increasing probation administration fee from $50 maximum to $75 maximum]), § 7 (Pen. Code, § 1203.4, subd. (d) [increasing fee to set aside plea from $120 maximum to $150 maximum]).

[36] See, e.g., Sen. Com. on Public Safety, Analysis of Sen. Bill No. 676 (2009-2010 Reg. Sess.) as amended Apr. 13, 2009, p. A (framing the "key issue" of the bill as follows: "Should the amount in fees that a county, city or court may charge for various services be increased or the maximum amount that can be charged eliminated so that actual costs of the services can be collected?"); Assem. Com. on Local Gov., Analysis of Sen. Bill No. 676 (2009-2010 Reg. Sess.) as amended Jun. 25, 2009, p. 4 (the bill "allows county governments to charge the people who use county services fees [in] an amount that reflects the actual costs of providing those services").

8

The fees by state law, including vital records fees, recording fees and civil fees charge[d] by the sheriff's department, appear to be the most inflexible and costly for counties. Many county fees set by the state do not cover the cost of providing the service. . . . When a fee based service does not recover sufficient funds to cover the cost of providing the service, the difference comes out of the county's general fund. The cost of these services is supposed to be borne by only those using the services, but ends up being subsidized by all taxpayers – including those who never use a particular service. This in turn puts pressure on other services that are funded by the county general fund, such as indigent health care, libraries, and law enforcement.[37]

This history confirms that the increase in base recording fees was intended to reimburse the county for its costs in collecting them and suggests that this reimbursement was intended for the benefit of the county as a whole.

Further, the State Controller's fund accounting regulations support the conclusion that the county may use the general fund for the base recording fees, which, as mentioned, are collected to reimburse the county for its costs in providing the recording and indexing services.[38] The regulation describing fund categories provides that the general fund "is available for any authorized purpose" and "is, therefore, used to account for all revenues and all expenditures not provided for in other funds."[39] The Controller's regulations do not specifically provide for the deposit of base recording fees into any other fund.[40] This reinforces our view that the section 27361(a) fees collected for county reimbursement may properly be deposited by the county into the general fund.[41]

---

[37] Sen. Rules Com., Off. Of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill 676 (2009-2010 Reg. Sess.) as amended Sept. 4, 2009, pp. 6-7.

[38] As discussed above, a portion of the base recording fees must be used for modernization of the county recording system and another portion must be deposited in the general fund. This opinion addresses the remaining portion.

[39] Cal. Code Regs., tit. 2, § 921, subd. (a).

[40] See Cal. Code Regs., tit. 2, § 921, subds. (b)-(h) (enumerating and describing other types of funds).

[41] As a practical matter, money is "fungible." (*United States v. Sperry Corp.* (1989) 493 U.S. 52, 62, fn. 9; *People v. Gbadebo-Soda* (1995) 38 Cal.App.4th 160, 168.) As a result, once base recording fees and other revenues are deposited into the general fund, these monies are indistinguishable. (Cf. *People v. Bolding* (2019) 34 Cal.App.5th 1037, 1045

9

One recorder suggests that if the county has "solely" funded recorder operations with these base recording fees, it wrongly "diverts" them by using them to fund other county departments. Not so. In adopting the annual budget, absent any statutory restriction, the board of supervisors is free to determine the appropriations for each department. A portion of the recorder's base recording fees is legally restricted for modernizing the county's recording system, and therefore the county must ensure that it is used for this purpose.[42] And a portion must be deposited in the general fund.[43] But nothing in section 27361(a) or any other statute restricts the use of the remaining amount of the base recording fees.[44]

We conclude that, for the reasons stated, the recorder is not entitled to recover base recording fees collected for reimbursement of the county's costs of services rendered under section 27361(a) and deposited in the county's general fund.

## 2. May a county recorder use an offset to recover "excess" base recording fees?

The second question asks whether the recorder may recoup base recording fees exceeding the costs of services rendered under section 27361(a) by retaining, in a separate account, other fees or taxes that the recorder collects for the county. In connection with this question, we are advised of a scenario where the recorder would use this "offset" in lieu of a claim against the county that would be barred by the statute of limitations.[45]

---

[when funds from lawful and unlawful activities are combined into one asset, the funds "'cannot be traced to any particular source, absent resort to accepted, but arbitrary, accounting techniques'"], quoting *U.S. v. Moore* (4th Cir. 1994) 27 F.3d 969, 976-977.)

[42] Gov. Code, § 27361, subds. (a)(2), (c); see Cal. Code Regs., tit. 2, § 921, subd. (b) (a "special revenue fund" is used by a county "[t]o account for the proceeds of specific revenue sources . . . that are legally restricted to expenditures for specified purposes").

[43] Gov. Code, § 27361, subd. (b).

[44] The budgeted expenses of collecting base recording fees still must be borne by the county, however, and may be allocated from the general fund for this authorized purpose. (See Gov. Code, §§ 25214, subd. (a), 25252, 29089, subd. (g), 29301.)

[45] See *Robert F. Kennedy Medical Center v. Dept. of Health Services* (1998) 61 Cal.App.4th 1357, 1361-1362 (Welfare and Institutions Code section 14177, which permits the Department of Health Services to recover Medi-Cal overpayments by offsetting them against the amounts it currently owes the provider, does not have a statute of limitations); 44 Ops.Cal.Atty.Gen. 58, 65 (1964) (no statute of limitations bars recovery under the State School Building Aid Law of 1952 via the state's administrative "deductions from the

This question incorrectly assumes that a recorder has authority over these fees. As a threshold matter, we note that there may be questions about whether such "excess" fees constitute taxes that would require voter approval.[46] Assuming these excess fees are lawful, however, they are governed by the same principles discussed above. Namely, the board of supervisors, not the recorder, has the power to establish funds and disperse revenues. Additionally, since the recorder may not incur any obligation or expend any money exceeding the board's appropriations, the recorder could not spend or refund these "excess" base recording fees absent board approval.

Just as there is no right without a remedy, there is no remedy without a right.[47] As we have concluded above, the recorder has no right to the county-reimbursing portions of the base recording fees, whether or not "excess." Therefore, the recorder may not lawfully use offset as a remedy in this situation.

*****

---

amounts payable to the [school] districts from the state school fund").

[46] See *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 268 ("To the extent fees exceed a reasonable amount in relation to the benefits or costs underlying their imposition, they are taxes"); Cal. Const., art. XIII C, §§ 1, 2 (local government taxes require voter approval). Questions about whether "excess" base recording fees would be found unlawful are beyond the scope of this opinion.

[47] Compare *Peck v. Jenness* (1849) 48 U.S. 612, 623 ("A legal right without a remedy would be an anomaly in the law") & *McNiel v. Borland* (1863) 23 Cal. 144, 148 ("It is a maxim that there can be no right without a remedy") with *Maclay v. Love* (1864) 25 Cal. 367, 382 ("until such charge or incumbrance is legally created, there is no right to enforce, and of course no remedy can be afforded") & *Aetna Life Ins. Co. v. Bellos* (Tenn. 1929) 13 S.W.2d 795, 797 ("The axiom, 'No wrong without a remedy,' is conversely true—no remedy without a wrong").